JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:      (415) 512-4000
Facsimile:      (415) 512-4077

SARAH S. LEE (State Bar No. 311480)
sarah.lee@mto.com
LAURA M. LOPEZ (State Bar No. 313450)
laura.lopez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:      (213) 683-9100
Facsimile:      (213) 687-3702

Attorneys for Defendant
STRIPE, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JASEN SILVER, JILL LIENHARD, PATRICIA TYSINGER, VICTORIA WATERS, AND ALAINA JONES, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STRIPE, INC.,<br><br>Defendant. | Case No. 4:20-cv-8196-YGR<br><br>**DEFENDANT STRIPE, INC.'S MOTION TO DISMISS THE COMPLAINT**<br><br>[*Filed concurrently with Request for Judicial Notice; Declaration of Jonathan H. Blavin; [Proposed] Order*]<br><br>DATE:      March 23, 2021<br>TIME:      2:00 p.m.<br>CTRM:      1<br>JUDGE:    Hon. Yvonne Gonzalez Rogers<br><br>Action Filed: November 20, 2020 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ..................................................................................................................1

II.  FACTUAL ALLEGATIONS ................................................................................................2

    A.   Stripe Elements Handles Payment Processing for Merchants ...................................2

    B.   Stripe Collects and Analyzes Data to Prevent Fraud ................................................2

    C.   Instacart's Privacy Policy Discloses Stripe's Activity ..............................................4

III. LEGAL STANDARD ...........................................................................................................6

IV.  ARGUMENT ........................................................................................................................7

    A.   Plaintiffs' Consent Forecloses All of their Claims....................................................7

    B.   Plaintiffs' Wiretapping Claims Fail as a Matter of Law: First, Third, and
        Fourth Causes of Action ..........................................................................................10

        1.   Plaintiffs fail to allege any unlawful interception .......................................10

        2.   Plaintiffs fail to allege acquisition of "contents" or substance of
             communications ...........................................................................................12

    C.   Plaintiffs Fail to Allege any Unauthorized Use of a Device Primarily for
        Eavesdropping: Second Cause of Action .................................................................15

    D.   Stripe Did Not Enter Into a "Consumer Transaction" With Plaintiffs: Fifth
        Cause of Action .......................................................................................................16

    E.   Plaintiffs Cannot Meet the High Standard of a Privacy Violation Under the
        California Constitution and Common Law: Sixth and Seventh Causes of
        Action ......................................................................................................................17

        1.   Plaintiffs had no reasonable expectation of privacy in the data
             collected ......................................................................................................17

        2.   Far from highly offensive, Plaintiffs allege commonplace data
             collection necessary for the transactions they initiated...............................20

    F.   Plaintiffs Fail to Allege Unlawful, Unfair, or Fraudulent Conduct: Eighth
        Cause of Action .......................................................................................................22

    G.   Plaintiffs Have Not Pled an Unjust Enrichment Claim: Ninth Cause of
        Action ......................................................................................................................25

V.   CONCLUSION ...................................................................................................................25

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**

**Page**

FEDERAL CASES

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ....................................................................23, 24, 25

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) .................................................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .................................................................................................25

*Bradley v. Google, Inc.*,
    No. C 06-05289 WHA, 2006 WL 3798134 (N.D. Cal. Dec. 22, 2006)...................................11

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ..............................................................................13, 14

*Bunnell v. MPAA*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007)................................................................................12

*Chevron Corp. v. Donziger*,
    No. 12–mc–80237 CRB (NC), 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013)..................14, 19

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ...................................................................................8

*Cousineau v. Microsoft Corp.*,
    992 F. Supp. 2d 1116 (W.D. Wash. 2012) ........................................................................13, 14

*Cramer v. Consol. Freightways, Inc.*,
    209 F.3d 1122 (9th Cir. 2000) (amended on other grounds 255 F.3d 683 (9th
    Cir. 2001)) ...............................................................................................................................7

*Crawford v. Beachbody, LLC*,
    No. 14cv1583–GPC(KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)................................8

*Doe v. Epic Games, Inc.*,
    435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................................25

*In re Facebook Biometric Info. Priv. Litig.*,
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................................................8

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020).......................................................................................12, 17, 19

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013)................................................................................................6

*In re Frontier Co., Ltd.*,
No. 19-MC-80184-LB, 2019 WL 3345348 (N.D. Cal. July 25, 2019)....................................14

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .............................................................................7, 10

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ...............................................................................12

*In re Google Android Consumer Privacy Litig.*,
No. 11–MD–02264 JSW, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ...............................21

*In re Google Location Hist. Litig.*,
No. 5:18-cv-05062-EJD, 2020 WL 2929629 (N.D. Cal. June 3, 2020)...................................14

*In re Google*,
428 F. Supp. 3d at 193.......................................................................................15, 17, 19

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ...................................................................................21

*Heeger v. Facebook, Inc.*,
No. 18-CV-06399-JD, 2020 WL 7664459 (N.D. Cal. Dec. 24, 2020) ........................17, 18, 19

*Hernandez v. Path, Inc.*,
No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) .................................12

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109, 1124 (9th Cir. 2018)......................................................................................7

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018)...............................................................................................22

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................................14, 20, 21

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)...............................................................................................11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................17, 18, 19

*Moose Run, LLC v. Libric*,
No. 19-cv-01879-MMC, 2020 WL 3316097 (N.D. Cal. June 18, 2020)................................25

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
No.17-cv-02911-JSC, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ................................15, 21

*Moretti v. Hertz Corp.*,
No. C 13–02972 JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ......................................8

*In re Nickelodeon Consumer Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016)................................................................................................22

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019)..................................................................................8

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) ...........................................................................11, 13

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........................................................................7, 17, 20

*Perkins v. LinkedIn Corp.*,
53 F. Supp. 3d 1190 (N.D. Cal. 2014) ................................................................................10

*Potter v. Havlicek*,
No. 3:06-CV-211, 2008 WL 2556723 (S.D. Ohio June 23, 2008) ...........................................16

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)......................................15

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) ..............................................................................20

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)........................................................................................7, 10

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001).............................................................................................6

*United States v. DE L'Isle*,
825 F.3d 426 (8th Cir. 2016)..............................................................................................18

*United States v. Hillaire*,
857 F.3d 128 (1st Cir. 2017) ..............................................................................................18

*Weimin Chen v. Sierra Trading Post, Inc.*,
No. 2:18-CV-1581-RAJ, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019)...............................8

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..........................................................................13, 17, 18

**TABLE OF AUTHORITIES**
(Continued)

**Page**

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014)...............................................................................................13, 14

**STATE CASES**

*Armstrong v. S. Bell Tel. & Tel. Co.*,
    366 So. 2d 88 (Fla. Dist. Ct. App. 1979)..............................................................................14

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007).............................................................................................23

*Daugherty v. Am. Honda Motor Co.*,
    144 Cal. App. 4th 824 (2006)...............................................................................................23

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011)...............................................................................................21

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009)..........................................................................................................20

*Hill v. NCAA*,
    7 Cal. 4th 1 (1994).......................................................................................................7, 17, 19, 20

*O'Brien v. O'Brien*,
    899 So. 2d 1133 (Fla. Dist. Ct. App. 2005).........................................................................11

*P.J. v. State*,
    453 So. 2d 470 (Fla. Dist. Ct. App. 1984)...........................................................................13

*People ex rel. Harris v. Delta Air Lines, Inc.*,
    247 Cal. App. 4th 884 (2016)...............................................................................................22

*Pioneer Elecs. (USA) Inc. v. Superior Ct.*,
    40 Cal. 4th 360 (2007)..........................................................................................................18

*State v. Roden*,
    179 Wash. 2d 893 (2014) .....................................................................................................11

*Susan S. v. Israels*,
    55 Cal. App. 4th 1290 (1997)...............................................................................................22

*TBG Ins. Servs. Corp. v. Superior Ct.*,
    96 Cal. App. 4th 443 (2002).................................................................................................19

**FEDERAL STATUTES**

18 U.S.C. § 2510(8) ..................................................................................................................13

**TABLE OF AUTHORITIES**
(Continued)

**Page**

18 U.S.C. § 2702(c)(6) ........................................................................................................14

18 U.S.C. § 2703(c)(2) ........................................................................................................14

Federal Trade Commission Act............................................................................................24

Federal Wiretap Act ...........................................................................................11, 12, 13

STATE STATUTES

Cal. Bus. & Prof. Code § 1427.............................................................................................22

Cal. Bus. & Prof. Code § 1798.............................................................................................22

Cal. Bus. & Prof. Code § 17200.......................................................................................4, 22

Cal. Bus. & Prof. Code § 22575, *et seq.* ...........................................................................22

Cal. Civ. Code § 1798.150(c)...............................................................................................23

Cal. Penal Code § 631 .............................................................................................4, 7, 11, 13

Cal. Penal Code § 635 .............................................................................................4, 7, 15, 22

Cal. Penal Code § 637 ..........................................................................................................22

Cal. Penal Code § 637.7 .......................................................................................................15

California Consumer Privacy Act of 2018.......................................................................22, 23

California Online Privacy Protection Act of 2003 ...............................................................22

Fla. Stat. Ann. § 934.02(3) ..................................................................................................13

Fla. Stat. Ann. § 934.03(1)(a)..............................................................................................13

Fla. Stat. Ann. § 934.03(2)(d) ..............................................................................................7

Fla. Stat. Ann. § 934.........................................................................................................4

Revised Code of Washington § 9.73.030(1) ......................................................................7, 13

Revised Code of Washington § 9.73.030.............................................................................4

Utah Code Ann. § 13-37-102(4)(a) ......................................................................................16

Utah Code Ann. § 13-37-201(1) ..........................................................................................16

**TABLE OF AUTHORITIES**
(Continued)

**Page**

Utah Code Ann. § 13-37-201(5)(a)(i) ..................................................................................................16

Utah Code Ann. § 13-37 ..........................................................................................................4, 16

**RULES - OTHER**

Fed. R. Civ. Proc. 9(b) ....................................................................................................................23

Fed. R. Civ. Proc. 12(b)(6).................................................................................................................1

**TREATISES**

Restatement (Third) of Restitution...............................................................................................7, 25

Case No. 4:20-cv-8196-YGR
DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 23, 2021 at 2:00 p.m., or such other date and time as may be ordered, Defendant Stripe, Inc. ("Stripe") will and hereby does move to dismiss Plaintiffs' Complaint ("Compl."), pursuant to Federal Rule of Civil Procedure 12(b)(6).

Stripe moves to dismiss the Complaint with prejudice on the grounds that it fails to state any claim upon which relief may be granted, and any amendment would be futile.

## I.    INTRODUCTION

Stripe is an online payment processing platform that works with merchants of all sizes, including start-ups and Fortune 500 companies. Stripe provides much needed services to online merchants, including offering a safe and secure e-commerce platform through which merchants can accept payments that are compliant with strict data privacy standards. As part of its integrated payment services, Stripe also uses machine learning technology to detect and prevent fraudulent transactions before they occur, protecting both merchants and consumers alike—including the named Plaintiffs here.

The Complaint alleges that in providing these services, Stripe collected credit card and certain device data from Plaintiffs when they completed transactions on Instacart, a merchant integrating its application with the Stripe e-commerce platform, in purported violation of various state wiretapping statutes and other laws. The core problem with Plaintiffs' theory, however, is that Instacart's Privacy Policy, to which the Plaintiffs consented, discloses the precise conduct challenged here. It states that Instacart "share[s] information about you and your order with the other parties who help enable the service," including "the payment processing partner(s) that we use to validate and charge your credit card," and as "reasonably necessary to . . . prevent, detect, or otherwise handle fraud." These disclosures, among others, foreclose all of Plaintiffs' claims.

Plaintiffs' claims suffer from multiple other defects. For example, Plaintiffs do not plead that Stripe "intercepted" any substantive "contents" of communications, as the wiretapping laws at issue require. Rather, they've alleged that Stripe *directly* received from users—not through seizing data transmitted to Instacart—basic transaction processing and device data. Nor do Plaintiffs' common law claims fare better, as collecting such data both to process transactions and prevent

fraud is not highly offensive conduct, as required to be a cognizable tort.  To the contrary, such conduct on its face benefits the e-commerce ecosystem.

For these and several other reasons, Plaintiffs' Complaint should be dismissed.

## II.    FACTUAL ALLEGATIONS

### A.    Stripe Elements Handles Payment Processing for Merchants

Stripe is "one of the largest online payment processors in the world."  Compl. ¶ 1.  Its customers include online merchants "who operate popular websites and mobile applications, such as Instacart."  *Id*.  One of Stripe's products is a software product called "Stripe Elements."  Compl. ¶ 22.  By using Stripe Elements, merchants can "avoid the technical difficulties associated with developing and deploying their own payment forms into their websites and mobile applications."  *Id*.  Merchants can simply add Stripe's software code, called "Stripe.js," into their websites or applications, which allows Stripe's payment forms to be displayed to consumers.  *Id*.  The payment forms can be customized to match the "look and feel" of merchants' websites.  Compl. ¶ 24.

When consumers submit information into payment forms that use Stripe's software code, the payment and related information is sent directly to Stripe without "without ever having it touch" the merchant's servers.  *Id*. ¶ 30 (citing https://stripe.com/docs/stripe-js); *id*. ¶ 31.  Once Stripe receives the payment information, Stripe "handles the collection and validation of the consumer's payment information, as well as processing the payment."  *Id*. ¶ 22.  The design of Stripe's software code to transmit information directly from consumers to Stripe, bypassing merchants, *id*. ¶¶ 30–31, benefits merchants as they do not need themselves to manage an environment compliant with strict data privacy standards, such as the Payment Card Industry Data Security Standard (PCI-DSS), in handling consumers' sensitive payment information.  Declaration of Jonathan H. Blavin ("Blavin Decl."), Ex. A at 1 (https://stripe.com/docs/stripe-js) ("Because all sensitive information is handled by Stripe.js, it features simple PCI compliance . . . .").[1]

### B.    Stripe Collects and Analyzes Data to Prevent Fraud

Stripe receives several pieces of information from payment forms necessary to process

---

[1] As explained in Stripe's concurrently-filed Request for Judicial Notice, these Stripe webpages, as well as Instacart's Privacy Policy, are incorporated by reference into the Complaint, and are publicly-accessible webpages that may be judicially noticed by the Court on a motion to dismiss.

payments, which may include consumers' "name and address, telephone number, email address, and . . . credit card information."  Compl. ¶ 3.  Plaintiffs allege that Stripe also collects other information, including: "the consumer's IP address; the geolocation of the consumer and his or her device; the name of the consumer's bank or card issuer; whether or not the consumer had sufficient funds for the transaction; other processing codes returned by the consumer's bank, such [*sic*] 'do not honor' codes or those relating to stolen cards; and whether the consumer later disputes the charge."  *Id*. ¶ 5.  Plaintiffs further allege that Stripe's code "installs tracking cookies on consumers' computers and mobile devices, so that Stripe can track their purchasing behavior across its vast merchant network."  *Id*. ¶ 6.

As Plaintiffs allege, Stripe analyzes the data it receives to fight and prevent fraud, which benefits both merchants and consumers whose cards may be being used without their permission.  Compl. ¶ 32 (citing https://stripe.com/radar ("Radar scans every payment using thousands of signals from across the Stripe network to help detect and prevent fraud.")); *id*. ¶ 35 (Stripe uses this information "to assess risk and predict fraud").  The data is not used to market or advertise products to consumers, and the Complaint contains no allegation that Stripe collects transaction-specific information or data on consumers' product preferences.  Stripe's fraud prevention tool, called Radar, analyzes the data through machine learning to detect and prevent fraudulent transactions before they occur.  *See generally* Blavin Decl., Ex. B (https://stripe.com/radar).  For example, Stripe analyzes the use of a card associated with a "single device profile" and against IP addresses to "identify IP spoofing and proxy usage" by potentially bad actors.  *Id*. at 4.

To help detect and prevent fraud, Stripe creates "Risk Insights" profiles for users.  Compl. ¶ 8, Fig. 1.  Plaintiffs allege that Stripe makes the information in the Risk Insights profiles "available to its merchant customers" such that the information "could be accessed by *any* Stripe customer who processed a payment for that particular consumer."  Compl. ¶ 35 (emphasis in original).  As the Complaint makes clear, the information in the Risk Insights profiles is limited, however, and constitutes: (1) an "elevated risk score," or Radar's numeric assessment of risk based on aggregated data (but does not include the underlying data itself); (2) analysis of fraud risk based on aggregated data regarding the user which again is not disclosed to the merchant (*e.g.*,

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

authorization rate for transactions); and (3) limited personal data that merchants *already receive* from consumers when users visit their websites, including their names, addresses, IP addresses, device information, and billing information.  Compl. ¶ 8, Fig. 1.

Plaintiffs do not allege that Stripe takes personal data from consumers and provides it to all of its merchant customers, including merchants that have no connection to the consumers.  Nor do they allege that Stripe provides personal data to merchants for marketing or advertising purposes.  Instead, Plaintiffs allege a consumer's Risk Insights profile is only available to a merchant if that specific consumer opted to visit a merchant's online marketplace, Compl. ¶ 35, and the profile consists primarily of Stripe's aggregated analysis of fraud risk⸺based on underlying data that is *not* disclosed to merchants⸺and personal information that the merchant would *already* be receiving to process the consumer's transaction, Compl. ¶ 8, Fig. 1.  The profile contains targeted information to allow Stripe and its merchant customers to determine the likelihood that a particular user is a machine bot or a bad actor.  *Id*.  Plaintiffs do not allege (nor can they) that the profiles assess credit worthiness or are used for any other purposes.

Based on this alleged conduct, Plaintiffs bring nine causes of action: (1) violation of the California Invasion of Privacy Act ("CIPA"), Penal Code section 631; (2) violation of CIPA, Penal Code section 635; (3) violation of the Florida Security of Communications Act, Florida Statutes section 934; (4) violation of the Revised Code of Washington, section 9.73.030; (5) violation of the Utah Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code section 13-37; (6) invasion of privacy under the California Constitution; (7) intrusion upon seclusion; (8) violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, *et seq*.; and (9) unjust enrichment.  *See* Compl. ¶¶ 100–185.

**C.  Instacart's Privacy Policy Discloses Stripe's Activity**

All of the named Plaintiffs assert claims premised on their purchase of items from only one merchant, Instacart.  *See* Compl. ¶¶ 41–90.  Each Plaintiff conducted his or her Instacart transactions by completing information on Instacart's "checkout page."  Compl. ¶ 26, Fig. 2; *see also* Compl. ¶¶ 43, 53, 63, 73, 83.  Instacart's checkout page contains Stripe's software code, and the payment information that a consumer enters into the checkout page is sent directly to Stripe

without ever being acquired by Instacart.  Compl. ¶¶ 26, 27, 30, 31.

When Plaintiffs placed an order with Instacart, they agreed to be bound by its Privacy Policy.  The relevant language on the checkout page, as shown in the Complaint, provides:

By placing your order, you agree to be bound by the Instacart Terms of Service and Privacy Policy. Your

Compl. ¶ 26, Fig. 2.  The "Terms of Service" and "Privacy Policy" text on the checkout page provides hyperlinks to the full text of these documents, which are available for the consumers' review before placing an order.  *Id*.; Blavin Decl. ¶¶ 4-5.  To complete the order, Plaintiffs then clicked a green "Place Order" button:

Place order

Compl. ¶ 26, Fig. 2.  Each Plaintiff alleges that he or she submitted orders on Instacart by clicking the "Place Order" button on the checkout page.  Compl. ¶¶ 45, 55, 65, 75, 85.

The Instacart Privacy Policy expressly discloses the sharing of information with parties like Stripe to provide the payment processing and fraud detection services alleged in the Complaint.  Blavin Decl., Ex. C.[2]  The Privacy Policy states that Instacart "need[s] to share information about you and your order with the other parties who help enable the service.  This includes, for example . . . the payment processing partner(s) that we use to validate and charge your credit card."  *Id*. at 3, § IV.  It also discloses that Instacart may "share information with third parties to process information on our behalf or to otherwise provide certain services," and "may share your information when [it] believe[s] that the disclosure is reasonably necessary to . . . prevent, detect, or otherwise handle fraud, security, or technical issues."  *Id*. at 4, § IV.  The Policy further states that the information Instacart collects and may share with third parties includes "name," "email address, "address," "phone number," "credit card information," "precise location data," "IP address of your

_____

[2] Instacart's prior Privacy Policy, Blavin Decl., Ex. D, contains identical disclosures and would have applied to Plaintiff Victoria Waters' May 14, 2020 purchase, Compl. ¶ 71.  Instacart's current Privacy Policy last updated on June 19, 2020, Blavin Decl., Ex. C, applies to all other purchases of the named Plaintiffs alleged in the Complaint.  *See* Compl. ¶¶ 41, 51, 61, 81.

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

device, information about the browser, operating system and/or app you are using, unique device identifiers, pages that you navigate to and links that you click, searches that you run on the Services, and other ways you interact with the Service." *Id*. at 1-2, § II; *see also id.* at 3-4, § IV; *id*. at 5, § VIII ("We disclose the following categories of personal information to third parties for our commercial purposes: identifiers, demographic information, commercial information, relevant order information, internet activity, geolocation data, sensory information, and inferences."). The Privacy Policy thus unambiguously states that Instacart may disclose to its payment processing partners like Stripe consumers' credit card and payment information as well as their device information, IP address, geolocation data, Internet activity, and other commercial information.

The Privacy Policy further discloses that Instacart and its "partners" may install cookies or other tracking software on users' devices. It states that Instacart and "our partners" "use various technologies to collect information, including but not limited to cookies, pixels, scripts, and device identifiers." *Id*. at 2, § II. These include "persistent cookies (which only expire when you choose to clear them from your browser), pixels, scripts, and other identifiers to collect information from your browser or device that helps us do things such as understand how you use our services and other services." *Id*. The Privacy Policy further discloses that Instacart and its "partners" may "use these technologies to collect information about your online activity over time and across different websites or online services." *Id*. It also notes that users may "block cookies or adjust settings for notifications when a cookie is set." *Id*. This language discloses that Instacart's partners, including Stripe, may install software on consumers' devices to gather information about their online activity across different sites and services.

## III.    LEGAL STANDARD

The Complaint must be dismissed if it does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Although well-pleaded allegations of material fact are taken as true, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013), the Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

## IV.    ARGUMENT

### A.    Plaintiffs' Consent Forecloses All of their Claims

Under Plaintiffs' own allegations, they consented to the alleged conduct, which defeats the core theory of liability underlying all of the claims asserted.[3]

Each named Plaintiff asserts claims based on purchases from only one merchant, Instacart, and under the Complaint's allegations, each named Plaintiff consented to the terms of Instacart's Privacy Policy, which covers Stripe's alleged conduct here. *See supra* at 4–5. As the Complaint's own allegations make clear, Instacart obtains consent from users to its Privacy Policy at the time they complete their purchases. Instacart's checkout page expressly provides that clicking the "Place Order" button constitutes agreement to the Privacy Policy and provides a link to the complete text of the Privacy Policy. *See supra* at 4–5; Compl. ¶ 26, Fig. 2 ("By placing your order, you agree to be bound by the Instacart Terms of Service and Privacy Policy." (including hyperlinks)); Blavin Decl. ¶¶ 4-5. Each Plaintiff alleges he or she clicked the "Place Order" button on Instacart's checkout page, Compl. ¶¶ 45, 55, 65, 75, 85, thereby consenting to the terms of the Privacy Policy.

Courts consistently hold that terms of service and privacy policies, like Instacart's Privacy Policy here, can establish consent to the alleged conduct challenged under various state wiretapping statutes and related claims. *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018) (consent established for wiretapping claims given that "Terms and Policies contain numerous disclosures related to information collection on third-party websites"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135–37 (N.D. Cal. 2015) (dismissing CIPA claim where app provider's terms and

---

[3] User consent is a defense to all of the claims alleged. *E.g.,* Cal. Penal Code § 631(a) (prohibits wiretapping "without the consent of all parties to the communication"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (user consent a defense under CIPA); *Cramer v. Consol. Freightways, Inc.*, 209 F.3d 1122, 1130, n.9 (9th Cir. 2000) (*amended on other grounds* 255 F.3d 683 (9th Cir. 2001)) (claim under Cal. Penal Code "Section 635 . . . depends on consent"); Fla. Stat. Ann. § 934.03(2)(d) (permits interception of communication "when all of the parties to the communication have given prior consent"); Wash. Rev. Code Ann. §§ 9.73.030(1) (a)-(b) (prohibits interception without "the consent of all the participants" to communication); *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994) (for invasion of privacy claim, "voluntary consent" is a defense); Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011) (emphasis in original) ("Unjustified enrichment is enrichment that lacks an adequate legal basis" and "is *nonconsensual*."); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018) (UCL claim properly dismissed "because the [plaintiffs] did consent to" conduct at issue).

privacy policy provided consent for the alleged disclosures).  Further, it is well settled that "[a] binding contract is created if a plaintiff is provided with an opportunity to review the terms of service in the form of a hyperlink," and it is "sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service."  *Moretti v. Hertz Corp.*, No. C 13–02972 JSW, 2014 WL 1410432, at \*2 (N.D. Cal. Apr. 11, 2014); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (user agreement enforceable where user had to "take some action— a click of a dual-purpose box—from which assent might be inferred.").[4]

Here, Plaintiffs were "provided with an opportunity to review the terms" of the Privacy Policy.  *Crawford v. Beachbody, LLC*, No. 14cv1583–GPC(KSC), 2014 WL 6606563, at \*3 (S.D. Cal. Nov. 5, 2014).  They were required to take an affirmative step—clicking the "Place Order" button—to acknowledge that they were agreeing to the terms of the Privacy Policy.  They were told the consequences that would follow from clicking the button, including their acceptance of the Privacy Policy.  And they clicked the button.  That is "enough to form a contract."  *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1166.

The terms of Instacart's Privacy Policy cover all of Stripe's conduct alleged in the Complaint.  The Complaint alleges that "Stripe handles the collection and validation of the consumer's payment information, as well as processing the payment."  Compl. ¶ 22.  It asserts that Stripe receives consumers' "payment information" (credit card number, name, address, contact information), as well as their IP address, device geolocation, name of the bank or card issuer, whether they had sufficient funds for the transaction, and "processing codes" returned by the bank, such as "do not honor codes" or those relating to stolen cards.  *Id*. ¶ 5.  The Complaint also alleges that Stripe "installs tracking cookies on consumers' computers and mobile devices, so that Stripe

---

[4] *See also*, *e.g.*, *Cordas v. Uber Techs., Inc*., 228 F. Supp. 3d 985, 990–91 (N.D. Cal. 2017) (plaintiff agreed to terms when he clicked "DONE" to complete sign-up on page that stated: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy."); *Weimin Chen v. Sierra Trading Post, Inc.*, No. 2:18-CV-1581-RAJ, 2019 WL 3564659, at \*3 (W.D. Wash. Aug. 6, 2019) ("In reviewing the 'Checkout' page at issue here, the Court finds Chen had constructive notice of the TOU.  Notably, the user does not need to scroll beyond the 'Place my Order' button to find the Consent line, which explicitly states that the user agrees to the 'Terms' by placing the purchase order."); *Nicosia v. Amazon.com, Inc*., 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019) (similar).

Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

can track their purchasing behavior across its vast merchant network." *Id*. ¶ 7. The Complaint alleges that Stripe uses consumers' information to "assess risk and predict fraud," *id*. ¶ 35, and contains no allegation that the information is used for any other purpose, including marketing to consumers or assessing credit worthiness.

The Instacart Privacy Policy discloses this precise conduct. It states that "we need to share information about you and your order with the other parties who help enable the service. This includes, for example . . . the payment processing partner(s) that we use to validate and charge your credit card." Blavin Decl., Ex. C at 3, § IV. It also discloses that Instacart may "share information with third parties to process information on our behalf or to otherwise provide certain services," and "may share your information when [it] believe[s] that the disclosure is reasonably necessary to . . . prevent, detect, or otherwise handle fraud, security, or technical issues." *Id*. The Privacy Policy states that the information Instacart collects and may share with third parties includes "name," "email address, "address," "phone number," "credit card information," "precise location data," "IP address of your device, information about the browser, operating system and/or app you are using, unique device identifiers, pages that you navigate to and links that you click, searches that you run on the Services, and other ways you interact with the Service." *Id*. at 1-2, § II; *see also id.* at 3-4, § IV; *id*. at 5, § VIII ("We disclose the following categories of personal information to third parties for our commercial purposes: identifiers, demographic information, commercial information, relevant order information, internet activity, geolocation data, sensory information, and inferences."). This language makes clear to consumers that Instacart may disclose to its payment processing partners like Stripe their credit card and payment information as well as their device information, IP address, geolocation data, Internet activity, and other commercial information.

The Privacy Policy's statement that information may be shared with partners to prevent fraud and handle other security issues also covers Stripe's alleged collection of consumer data to detect fraud and its sharing of Risk Insights analyses with merchants to assist in their operations. And as noted, the Risk Insights profiles consist of Stripe's aggregated analysis of fraud risk—based on underlying data that is *not* disclosed to merchants—and personal information that the merchant would *already* be receiving to process the consumer's transaction. Compl. ¶ 8, Fig. 1; *supra* at 2–4.

The Privacy Policy also discloses the use of cookies and other tracking devices.  It states that "[w]e" and "our partners . . . use various technologies to collect information, including but not limited to cookies, pixels, scripts, and device identifiers."  Blavin Decl., Ex. C at 2, § II.  These include "persistent cookies (which only expire when you choose to clear them from your browser), pixels, scripts, and other identifiers to collect information from your browser or device that helps us do things such as understand how you use our services and other services."  *Id*.  The policy also discloses that Instacart and its "partners" may "use these technologies to collect information about your online activity over time and across different websites or online services."  *Id*.  The Privacy Policy therefore clearly discloses that Instacart's partners, including Stripe, may install software on users' devices to gather information about their online activity across different sites and services.

Courts have dismissed wiretapping and related claims based on substantially similar language.  *E.g.*, *Smith*, 745 F. App'x at 8 (holding that privacy policy established consent to wiretapping claims, where policy disclosed that "[w]e collect information when you visit or use third-party websites and apps that use our Services.... This includes information about the websites and apps you visit, your use of our Services on those websites and apps, as well as information the developer or publisher of the app or website provides to you or us") (omission in original); *Garcia*, 78 F. Supp. 3d at 1136–37 (dismissing CIPA claim given "express provisions of the Privacy Policy and TOS, which ostensibly contradict [plaintiff's] bare allegation that he did not consent").[5]  In sum, because Plaintiffs consented to the practices upon which each of their claims is based, their claims fail as a matter of law and the Complaint should be dismissed on that basis alone.

### B.     Plaintiffs' Wiretapping Claims Fail as a Matter of Law: First, Third, and Fourth Causes of Action

#### 1.     Plaintiffs fail to allege any unlawful interception

Apart from Plaintiffs consenting to the conduct at issue, Plaintiffs' first, third, and fourth causes of action⸺brought for violations of the California, Florida, and Washington state

---

[5] That the disclosures were provided by Instacart (as opposed to Stripe directly) is immaterial.  *E.g.*, *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (LinkedIn user consented as a matter of law to conduct based on statements made by third party Google).  Instacart's Privacy Policy explicitly states that consumers' information may be provided to its "partners."

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

wiretapping statutes⸺should also be dismissed because Plaintiffs do not allege any unlawful interception, i.e., an acquisition of a communication contemporaneous with its transmission.

The Ninth Circuit has held that an unlawful interception under the Wiretap Act requires an "acquisition contemporaneous with transmission" meaning that an electronic communication is "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts have held that these requirements apply equally to CIPA. *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) (construing statutes the same and granting judgment on pleadings on CIPA claim because of lack of intentional interception); *Bradley v. Google, Inc.*, No. C 06-05289 WHA, 2006 WL 3798134, at *6 (N.D. Cal. Dec. 22, 2006) ("Like its federal counterpart, these sections of California's Invasion of Privacy Act require the interception of an electronic communication."); *see also* Cal. Penal Code § 631(a) (noting that communication is acquired "while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state"). This standard also applies to the Florida and Washington wiretapping statutes. *O'Brien v. O'Brien*, 899 So. 2d 1133, 1136 (Fla. Dist. Ct. App. 2005) (holding "electronic communications, in order to be intercepted, must be acquired contemporaneously with transmission and that electronic communications are not intercepted within the meaning of the Federal Wiretap Act if they are retrieved from storage"); *State v. Roden*, 179 Wash. 2d 893, 904 (2014) (to intercept means to "stop before arrival or interrupt the progress or course").

Plaintiffs fail to allege that Stripe intercepted any communication contemporaneous with its transmission. To the contrary, Plaintiffs allege Stripe's software code transmits consumers' information *directly* from consumers' devices to Stripe's servers when a consumer submits the payment form. *See* Compl. ¶ 30 (Stripe's software code "tokenizes the sensitive information within an Element without ever having it touch your [i.e., the merchant's] server"); *id*. ¶ 31 (alleging that consumer's "submitting the payment form . . . causes" the "information *to be sent to Stripe*, such as the consumer's browser, device, IP address, and the tracking cookie" (emphasis added)). Plaintiffs do not allege that such information is first sent to the merchant's website, and then stopped or seized by Stripe and redirected to its servers.

Case No. 4:20-cv-8196-YGR

This Court and other courts in this District have held in similar circumstances that such direct transmissions between the sender and the recipient do not constitute "interceptions" within the meaning of the wiretap statutes, as no communication is "stopped" or "seized" in transmission, notwithstanding that the sender may be unaware of such transmissions or the identity of the recipient. *See*, *e.g.*, *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *3, 5 (N.D. Cal. Oct. 19, 2012) (dismissing claims under the Wiretap Act and CIPA because "[a]lthough Path allegedly transmitted the Class Members' Contact Address Books from the Class Members' mobile devices *to Path's servers*, Path did not 'intercept' a 'communication' to do so" (emphasis added)); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1087 (N.D. Cal. 2018), on reconsideration, 2018 WL 3068248 (N.D. Cal. June 21, 2018) ("The communications occurred *directly between* Lyft and Uber posing as Lyft riders; there was no contemporaneous transmission between Plaintiff and Lyft that was stopped or interrupted by Uber . . . . That Uber was pretending to be a legitimate Lyft rider is of no moment; Plaintiff has still not alleged the interception of a communication from Plaintiff to a third party" (emphasis added)); *Bunnell v. MPAA*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (no interception where defendant "did not halt the transmission of the messages to their intended recipients").[6]

Stripe therefore did not intercept any transmission to a third party, including any merchant, when it allegedly collected Plaintiffs' information.  Plaintiffs' communications were transmitted directly to their original intended recipient: Stripe.  Accordingly, the first, third, and fourth causes of action should be dismissed.

### 2.   Plaintiffs fail to allege acquisition of "contents" or substance of communications

Plaintiffs' first, third, and fourth causes of action also should be dismissed because Plaintiffs fail to allege that Stripe acquired the substantive contents of any communications, as the

---

[6] This is not a case where the information allegedly was transmitted from the consumer to the merchant website, and Stripe installed code making a *duplicate* copy of that information at the point of transmission, directing the duplicated content to its own servers. *Cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 & n.9 (9th Cir. 2020) (holding that plaintiffs sufficiently stated claims under Wiretap Act and CIPA where Facebook duplicated and transmitted "GET requests" that were intended for website recipient, and noting that defendant must still "stop, seize, or interrupt in progress or course before arrival" for an interception to occur).

California, Florida, and Washington wiretapping statutes require.  None of the information Stripe allegedly collected from Plaintiffs constitutes the substance of communications.

Section 631 of CIPA makes it unlawful to use "any machine, instrument or contrivance" to intentionally intercept the contents of a communication over any "telegraph or telephone wire, line, cable or instrument," or to read, attempt to read, or learn the "***contents or meaning*** of any message, report, or ***communication*** while the same is in transit or passing over any wire, line or cable" without the consent of all parties to the communication.  Cal. Penal Code § 631(a) (emphasis added); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1036 (N.D. Cal. 2014).  Florida's wiretapping statute similarly makes it unlawful to "intentionally intercept[], or endeavor[] to intercept . . . any wire, oral, or electronic communication."  Fla. Stat. Ann. § 934.03(1)(a). "Intercept" is defined as "the aural or other acquisition of the ***contents*** of any wire, electronic, or oral ***communication*** through the use of any electronic, mechanical, or other device."  Fla. Stat. Ann. § 934.02(3) (emphasis added).  The Washington statute prohibits the interception of "private communication" and "private conversation," RCW § 9.73.030(1), which courts have held "should be construed within its ordinary connotation of oral exchange, discourse, or discussion." *Cousineau v. Microsoft Corp.*, 992 F. Supp. 2d 1116, 1129 (W.D. Wash. 2012).

To define "contents" and "communications" under these statutes, courts look to the construction of this term under the federal Wiretap Act.  *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act."); *P.J. v. State*, 453 So. 2d 470, 472 (Fla. Dist. Ct. App. 1984) ("[t]he federal statute's definitions of 'intercept' and 'contents' are the same as those of the Florida statute" (citations omitted)).  Under the federal Wiretap Act, "contents" means the "substance, purport, or meaning" of a communication, 18 U.S.C. § 2510(8)—that is, the "intended message conveyed by the communication."  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Whereas text messages or emails are "contents of communications," "the name, address, and subscriber number or identity of a subscriber or customer," user names, passwords, and geographic location information, and email and IP addresses are not "contents."  *Id.* (internal alterations omitted); *see also Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127–28 (N.D. Cal. 2020) ("user

-13-

Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

names, passwords, and geographic location information are not content" under CIPA); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1061 (N.D. Cal. 2012) (noting content is "limited to information the user intended to communicate, such as the words spoken in a phone call"); *In re Google Location Hist. Litig.*, No. 5:18-cv-05062-EJD, 2020 WL 2929629, at *1 (N.D. Cal. June 3, 2020) ("CIPA does not cover the type of geolocation tracking/collection at issue"); *Cousineau*, 992 F. Supp. 2d at 1129 (under Washington statute, geolocation data is not a "conversation").

Credit card information, which also does not reveal any substance or message of a communication, does not constitute "contents" either. *See In re Zynga*, 750 F.3d at 1107 (noting that "an allegation that Facebook and Zynga disclosed personally identifiable information is not equivalent to an allegation that they disclosed the contents of a communication" and noting that the statutes at issue "do not preclude the disclosure of personally identifiable information" including "credit card numbers", citing 18 U.S.C. §§ 2702(c)(6), 2703(c)(2)); *see also In re Frontier Co., Ltd.*, No. 19-MC-80184-LB, 2019 WL 3345348, at *3 (N.D. Cal. July 25, 2019) (subpoena seeking account information including credit card payment and related information did "not seek the content of any communication"); *Chevron Corp. v. Donziger*, No. 12–mc–80237 CRB (NC), 2013 WL 4536808, at *6 (N.D. Cal. Aug. 22, 2013) (characterizing information associated with creation of account including "billing information," as not "contents" of a communication).

The Complaint alleges that Stripe receives users' "payment information" which includes name, address, and credit card information, as well as IP information, browser or device information, geolocation of the user's device, name of the bank or card issuer, and processing codes. *See* Compl. ¶ 5. Notably, Plaintiffs do not allege that any information at all relating to the nature of the transaction at issue (*e.g.*, what was purchased) was disclosed to Stripe. None of this constitutes the "contents" of any communication. Plaintiffs' failure to identify any substantive contents of any intercepted communication is a basis for dismissal under CIPA, and Washington and Florida's wiretapping statutes. *See*, *e.g.*, *Brodsky*, 445 F. Supp. 3d at 127–28 ("Plaintiffs have also failed to identify the contents of any communication that Apple allegedly intercepted, as required to state a claim under the CIPA," dismissing § 631 claim); *see also Armstrong v. S. Bell*

-14-

*Tel. & Tel. Co.*, 366 So. 2d 88, 89 (Fla. Dist. Ct. App. 1979) (no violation of Florida statute where defendant recorded phone numbers and did not intercept "contents of any oral communication.").

### C.   Plaintiffs Fail to Allege any Unauthorized Use of a Device Primarily for Eavesdropping: Second Cause of Action

In their second cause of action Plaintiffs bring a claim under Section 635 of CIPA, which prohibits the assembly, sale, possession or furnishing to another of any device "which is primarily or exclusively designed or intended for eavesdropping upon the communication of another . . . ." Cal. Penal Code § 635. This claim fails under a plain reading of the statute. *In re Google*, 428 F. Supp. 3d at 193 ("The touchstone of statutory interpretation is the probable intent of the Legislature. The first step in determining that intent is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (citations and quotations omitted). It is indisputable that Stripe's payment processing services are not "primarily or exclusively designed or intended for eavesdropping" and Plaintiffs' conclusory assertions, which do little more than recite the statutory language, do not allege otherwise. Cal. Penal Code § 635(a); Compl. ¶ 113.[7] Instead, according to Plaintiffs' own allegations, the primary purpose of Stripe's services is to assist merchants and consumers in safely processing payment transactions, as well as to conduct fraud monitoring, prevention, detection, and financial compliance activities. *See supra* at 2–3.

This claim should also be dismissed for the independent reason that computer code absent a physical device does not constitute a "device" within the meaning of CIPA. *See*, *e.g.*, *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) (finding that "[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA because they are not 'equipment'" when analyzing claims under CIPA Section 637.7); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No.17-cv-02911-JSC, 2017 WL 6387764, at \*4–5 (N.D. Cal. Dec.

___

[7] Defendant has only been able to identify one case where a court upheld a Section 635 claim premised on allegations that a plaintiff's browsing activity on a website was surreptitiously collected by a third party marketing company that embedded its code on that site, but that case is inapposite. *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at \*3 (N.D. Cal. Oct. 23, 2019). Unlike the *Revitch* defendants, Stripe collects information necessary to effectuate a transaction initiated by the consumer and prevent fraud; by contrast, the plaintiff in *Revitch* was simply browsing a website. Moreover, unlike the *Revitch* plaintiff, Plaintiffs here cannot allege they did not know their data could be disclosed to Stripe; rather, they consented to it.

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

14, 2017) (same); *Potter v. Havlicek*, No. 3:06-CV-211, 2008 WL 2556723, at *8 (S.D. Ohio June 23, 2008) ("[T]he word 'device' does not encompass software"; it is a "piece of equipment or a mechanism designed to serve a special purpose or perform a special function.").

### D.    Stripe Did Not Enter Into a "Consumer Transaction" With Plaintiffs: Fifth Cause of Action

In its fifth cause of action, Plaintiffs bring a claim under Utah's Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code § 13-37.  In addition to Plaintiffs' consent, this claim fails as a matter of law for additional reasons.

First, the conduct here does not fit within the text of the statute.  This statute requires a commercial entity that "enters into a consumer transaction" to give notice to a consumer before the entity discloses nonpublic personal information to a third party for compensation.  Utah Code Ann. § 13-37-201(1).  A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition," or "a transaction."  Utah Code Ann. § 13-37-102(4)(a).  According to Plaintiffs' own allegations, Plaintiffs did not conduct any "transaction" with Stripe, and instead conducted its transactions *with Instacart*.  In fact, Plaintiffs assert that Instacart and Stripe had a commercial relationship, Compl. ¶ 1, not Plaintiffs and Stripe, and that they did not know Stripe was involved in their transactions at all.  Compl. ¶¶ 46 ("Mr. Silver did not know that Stripe was involved in the transaction at all"), 56 (same as to Plaintiff Lienhard), 66 (same as to Plaintiff Tysinger), 76 (same as to Plaintiff Waters), 86 (same as to Plaintiff Jones).  Plaintiffs' claim under this statute therefore fails as a matter of law.

Even if Stripe did somehow enter into "a consumer transaction" with Plaintiffs, the claim still fails under the statute's exception for disclosures related to business services.  The exception provides that "a commercial entity is not required to provide notice under this section if the disclosure of the nonpublic personal information is related to the third party providing to the commercial entity services, including business outsource services."  Utah Code Ann. § 13-37-201(5)(a)(i).  According to Plaintiffs' own allegations, Stripe analyzes and discloses consumer information to process payments and detect fraud.  Both are business services Stripe provides to its merchant customers, so any alleged disclosure of information is exempted from liability.

-16-

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

### E.    Plaintiffs Cannot Meet the High Standard of a Privacy Violation Under the California Constitution and Common Law: Sixth and Seventh Causes of Action

Plaintiffs' allegations also fall far short of the high bar required to establish their claims for invasion of privacy under the California Constitution and intrusion upon seclusion. "The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019) (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038). To establish the "threshold elements" of a privacy claim under the California Constitution, a plaintiff must demonstrate a "reasonable expectation of privacy in the circumstances," and that the "conduct by the defendant" constitutes "a serious invasion of privacy.'" *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019) (quoting *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 34–38 (1994)). For this second element, the plaintiff must show "an egregious breach of the social norms underlying the privacy right." *Heeger v. Facebook, Inc.*, No. 18-CV-06399-JD, 2020 WL 7664459, at *6 (N.D. Cal. Dec. 24, 2020).

A common law intrusion upon seclusion claim "must meet similarly high standards" to be actionable: the allegations must plausibly show an "intrusion into a private place, conversation or matter . . . in a manner highly offensive to a reasonable person." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Courts treat the California Constitutional and common law prongs as "effectively identical." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 196. When such claims are alleged together, as they are here, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601; *Heeger*, 2020 WL 7664459, at *6. Plaintiffs' claims fail under both causes of action.

#### 1.    Plaintiffs had no reasonable expectation of privacy in the data collected

Plaintiffs lacked a reasonable expectation of privacy in the type of information allegedly collected. At the outset "a plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion." *Opperman*, 205 F. Supp. 3d at 1072 (citing *Hill*, 7 Cal. 4th at 26). As discussed, Plaintiffs consented to the disclosure of the collected information by agreeing to Instacart's Privacy Policy, which clearly disclosed that information such as credit card information, device information,

geolocation data, Internet activity, and other commercial information could be shared with third party partners of Instacart, such as Stripe.  Apart from that, though, the alleged information collected is routinely collected for payments and for fraud detection and fraud prevention purposes by banks, credit card companies, credit reporting agencies, and webpages, and therefore its collection falls within users' reasonable expectations.

In cases like this one, where the "undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *In re Yahoo Mail Litigation*, 7 F. Supp. 3d at 1039 (no reasonable expectation of privacy in email communications generally, as a matter of law); *Heeger*, 2020 WL 7664459, at *4, *6 (no reasonable expectation of privacy in IP addresses and generalized location data as a matter of law); *Low*, 900 F. Supp. 2d at 1025.  Plaintiffs allege they voluntarily provided their credit card and billing information, as part of a purchase transaction, which necessarily would have included whether they had sufficient funds for the transactions, the name of the consumer's bank or card issuer, and any processing codes from the consumer's bank.  Compl. ¶¶ 3, 5.  The disclosure of such information to a payment processor—which occurs in every transaction—plainly falls within Plaintiffs' reasonable expectations.  *E.g.*, *United States v. Hillaire*, 857 F.3d 128, 129–130 (1st Cir. 2017) (finding no reasonable expectation of privacy in credit card number and expiration date, because that is data routinely provided to third party retailers); *United States v. DE L'Isle*, 825 F.3d 426, 432–33 (8th Cir. 2016) (finding no reasonable expectation of privacy in credit card strips because, "in the normal course, all of the information found in the magnetic strips on . . . credit cards is identical to the information in plain view on the front of the cards"); *Pioneer Elecs. (USA) Inc. v. Superior Ct.*, 40 Cal. 4th 360, 372 (2007) (no reasonable expectation of privacy in release of consumer's information, including name, phone number and address despite lack of consent, where consumers provided the information in defective product complaints).

Plaintiffs also allege that Stripe collects various technical information for its fraud detection and prevention services, including the consumer's IP address; the geolocation of the consumer (in fact, the geolocation information is based on the user's IP address); and device and operating system information.  Compl. ¶¶ 5, 33.  Courts routinely hold that this type of technical information, which

websites customarily collect from users visiting their sites, does not fall within users' reasonable expectation of privacy. *See*, *e.g.*, *Chevron Corp.*, 2013 WL 4536808, at \*10 (no expectation of privacy in IP addresses and IP logs associated with subscribers' email accounts because "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"); *Heeger*, 2020 WL 7664459, at \*4, \*6 (granting motion to dismiss and holding "[t]here is no legally protected privacy interest in IP addresses alone" or in the collection of generalized "location data"); *Low*, 900 F. Supp. 2d at 1025; *In re Google Location Hist.*, 428 F. Supp. 3d at 198 (no violation of information privacy rights despite defendant's alleged "surreptitious collection and storage of comprehensive and highly sensitive location data violates their information privacy rights"); *see also Donziger*, 2013 WL 4536808, at \*9 (finding California law did not support a privacy interest in "the subscriber and usage information associated with email addresses" and that such information is "vital to the commercial enterprises" of internet service providers).[8]

And crucially, Plaintiffs do not allege they had a reasonable expectation of privacy in the payment and other technical information that was collected. Rather, Plaintiffs simply allege that they did not subjectively expect Stripe (as opposed to Instacart) to collect this data. Compl. ¶¶ 44, 54, 64, 74, 84. But Plaintiffs' subjective expectations are irrelevant. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal. 4th at 37. Given the widespread use of online payment processing services like Stripe's, Plaintiffs' assertion that they expected to communicate only with the merchant, Instacart, and no one else, strains credulity. Compl. ¶ 4; *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 451 (2002) (looking to norms within "21st Century computer-dependent businesses"). Consumers are aware that payment processing companies like Stripe, PayPal, and others, are commonly used by online merchants. And even if there was no payment processing company like Stripe in the picture, Instacart would likely have to rely on its own bank to receive the payment information and to process the payment, and as noted, would collect this same device

---

[8] And unlike *In re Facebook, Inc. Internet Tracking Litig.*—where the court found Facebook collected "significant" amounts of data, despite expressly *disclaiming* such a practice in its terms (956 F.3d at 602–03)—here, Stripe limits data collection to that necessary to process consumer-initiated payments and for fraud prevention purposes, and that collection is expressly disclosed.

data as well.  It is implausible that Plaintiffs did not expect another entity to access their information, as needed to process the payment and to detect and prevent fraud, and even if they did, that subjective expectation certainly would not be reasonable.

### 2. Far from highly offensive, Plaintiffs allege commonplace data collection necessary for the transactions they initiated

"Plaintiffs must show more than an intrusion upon reasonable privacy expectations. Actionable invasions of privacy also must be 'highly offensive' to a reasonable person and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009) (citations omitted); *Opperman*, 205 F. Supp. 3d at 1077; *Hill*, 7 Cal. 4th at 26.  Plaintiffs' allegations do not meet this high bar: "[e]ven negligent conduct that leads to theft of highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiffs' right to privacy." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (citing *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127–28 (N.D. Cal. 2008).).  "A court determining whether th[e] [offensiveness] requirement has been met as a matter of law examines all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's 'motives and objectives.'"  *Hernandez*, 47 Cal. 4th at 295.

*First*, the degree of the intrusion is limited: as Plaintiffs allege, Stripe collects this data to process payments, and "to assess risk and predict fraud."  *See supra* at 3.  Indeed, Plaintiffs do not allege that Stripe uses any such information for marketing purposes, nor do Plaintiffs allege that Stripe takes personal, sensitive data from consumers and provides it to *all* of its merchant customers.  Instead, Plaintiffs allege a consumer's Risk Insights profile is only available to a merchant if that specific consumer visits the merchant's online marketplace.  And the Risk Insights profile consists primarily of Stripe's aggregated analysis of fraud risk—based on underlying data that is *not* disclosed to merchants—and personal information that the merchant would *already* be receiving to process the consumer's transaction.  *See supra* at 3–4.

*Second*, "[t]his case does not involve surveillance measures conducted for socially repugnant or unprotected reasons."  *Hernandez*, 47 Cal. 4th at 297.  To the contrary, the alleged

-20-

Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

collection here is universal, commonplace, and routine "commercial behavior." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011).  In *Folgelstrom*, the plaintiff alleged that the defendant retailer routinely asked for customers' zip codes in credit card transactions, asked a credit agency to match their zip codes and credit card numbers to home mailing addresses, and then engaged in mail marketing using the addresses.  The court concluded that the plaintiffs did not have a legally protected private interest in their mailing addresses and that the retailer's conduct was not egregious, but "routine commercial behavior." *Id.* at 992.

Similarly here, the collection of payment information, as well as additional information required to process the payment and aid Stripe in detecting and preventing fraudulent transactions, is conventional, routine commercial behavior, and far from an egregious breach.  Indeed, information such as payment information, geolocation, IP Address, the name of the consumer's bank, and whether or not the consumer had sufficient funds for the transaction, Compl. ¶ 5, is frequently shared by merchants and payment processing companies to ensure that payments are properly processed and that fraudulent transactions are quickly detected and prevented.  And courts have "consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 985, 988 (N.D. Cal. 2014) (Google's collection and disclosure of users' data, including to advertisers, did "not plausibly rise to the level of intrusion necessary to establish an intrusion claim"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "unique device identifier number, personal data, and geolocation information . . . does not constitute an egregious breach of social norms").[9]  Likewise,

---

[9] *See also*, *e.g.*, *In re Google Android Consumer Privacy Litig.*, No. 11–MD–02264 JSW, 2013 WL 1283236, at *1–2 (N.D. Cal. Mar. 26, 2013) (collection of "Plaintiffs' name, gender, zip code, App activity (including search terms or selections), geolocation data, and their phones' universally unique device identifiers" for purposes of providing "advertising services to App developers" not highly offensive); *Moreno v. San Francisco Bay Area Rapid Transit Dist.*, No. 17-CV-02911-JSC, 2017 WL 6387764, at *8 (N.D. Cal. Dec. 14, 2017) (dismissing California constitutional privacy and intrusion upon seclusion claims and noting that "[i]n this age of mobile technology the Court cannot conclude that a reasonable user would consider it highly offensive or egregious that a voluntarily downloaded mobile application which utilizes the user's cell phone identifier and location data when the app is in use, also 'periodically' accesses that anonymous data while the application is not in use").

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

courts have held that "us[ing] third-party cookies" on websites is not "sufficiently offensive" to "survive a motion to dismiss." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016). Instead, courts have typically only recognized reasonable privacy interests in highly sensitive personal data, such as medical information. *E.g.*, *Susan S. v. Israels*, 55 Cal. App. 4th 1290 (1997) (confidential mental health records).

Accordingly, Plaintiffs have failed to allege that the commonplace data collection they consented to here was highly offensive and constitutes an egregious breach of social norms.

### F.    Plaintiffs Fail to Allege Unlawful, Unfair, or Fraudulent Conduct: Eighth Cause of Action

Plaintiffs fail to allege a claim under any provision of California's UCL. "The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (citing Cal. Bus. & Prof. Code § 17200).

*Unlawful Prong.* Plaintiffs allege Stripe's conduct was unlawful because it violated (i) CIPA §§ 635 and 637; (ii) the California Online Privacy Protection Act of 2003 ("CalOPPA"), Cal. Bus. & Prof. Code § 22575, *et seq.*; and (iii) and the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Bus. & Prof. Code § 1798, *et seq.* Compl. ¶ 175.[10] But Plaintiffs' conclusory allegations do not establish these predicate violations and their claims under the unlawful prong fail. *Hodsdon v. Mars, Inc.*, 891 F.3d at 865.

*First*, for the reasons set forth above, the CIPA § 635 cause of action is without merit because Plaintiffs consented to the alleged conduct and they cannot plausibly allege that Stripe's payment processing software is a device "primarily or exclusively designed or intended for eavesdropping." Cal. Penal Code § 635(a). *Second*, Plaintiffs do not allege or even explain a violation of CIPA § 637, and that provision applies only to the disclosure of a "telegraphic or telephonic" communication to a third party and Plaintiffs do not allege that any such communication occurred. *Third*, the Complaint conclusorily asserts that Stripe has violated CalOPPA, which primarily addresses "the obligations of an operator of a commercial Web site or online service regarding the posting of a privacy policy on the Internet." *People ex rel. Harris v.*

---

[10] The Complaint incorrectly cites Cal. Bus. & Prof. Code § 1427 et seq.

*Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 888 (2016).  But Plaintiffs allege no specific facts in support of this claim (and at any rate, Stripe has a posted privacy policy, https://stripe.com/privacy).  Compl. ¶ 171.  *Finally*, the Complaint asserts that Stripe has violated the CCPA, but again offers no explanation of how.  Moreover, the CCPA has no private right of action and on its face states that consumers may not use the CCPA as a basis for a private right of action under any statute.  Cal. Civ. Code § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law.").  Plaintiffs therefore fail to establish a single predicate violation for purposes of the unlawful prong.

  ***Fraudulent Prong.***  At the outset, Plaintiffs' conclusory allegations do not show how members of the public are likely to be deceived, and they fail to meet the requisite particularity requirements for a fraud-based claim.  "Claims stated under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).  Under this Rule, in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Plaintiffs must include an account of the time, place, and specific content of the false representations at issue." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) (dismissing claims under the fraud prong of the UCL where plaintiffs failed to include an account of the time of the false representations at issue) (citations and quotations omitted).  Plaintiffs have not cleared that heightened bar here.

  Plaintiffs' fraud claim fails for a more crucial reason: there can be no fraud here, as the data collection practices at issue are plainly disclosed in Instacart's Privacy Policy.  For this same reason, Plaintiffs cannot show that Stripe had an affirmative duty to disclose its data collection practices.  "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006); *see also Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007) ("Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.").  Plaintiffs conclusorily allege that Stripe's data collection activities were "exclusively known" only to itself.  Compl. ¶ 173.  But that is plainly refuted by the disclosures in Instacart's Privacy Policy.

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

***Unfair Prong.*** Plaintiffs allege that Stripe's conduct was unfair because Stripe "intruded on communications . . . reasonably believed to be private." Compl. ¶ 171. For the reasons discussed above, Plaintiffs have failed to allege any privacy or statutory violations occurred. Plaintiffs do not have a reasonable expectation of privacy in the information collected here, including because they consented to its collection. Moreover, the use of payment processors like Stripe is commonplace in the world of e-commerce; it was not reasonable for Plaintiffs to assume Instacart would process its own payments. And Stripe only collected information from Plaintiffs for purposes of processing payments and preventing fraud.

Further, Plaintiffs' claim fails under any of the three balancing tests used by courts to determine whether a defendant's conduct satisfies the unfair prong. Applying the first balancing test, "the utility of [Stripe's] conduct" far outweighs "the gravity of the harm to the alleged victim." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 989. Stripe's data collection practices indisputably offer benefits to merchants and consumers, including Plaintiffs. Stripe analyzes the data it receives from consumers to fight and prevent fraud, including the illicit use of credit card numbers. Compl. ¶ 32 (citing https://stripe.com/radar). Additionally, as Plaintiffs allege, Stripe's services enable merchants to "avoid the technical difficulties associated with developing and deploying their own payment forms into their websites and mobile applications," thereby facilitating commercial activity. Compl. ¶ 22. Plaintiffs' allegation that they would not have entered into the at-issue transactions had they known Stripe, and not Instacart, was collecting their information, Compl. ¶ 177, is not only implausible, but it does not constitute grave harm.

The second balancing test adopts "the three-part test set forth in § 5 of the Federal Trade Commission Act: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *In re Anthem, Inc.*, 162 F. Supp. 3d at 989. This balancing test also is satisfied as Plaintiffs have not alleged a substantial injury and certainly not one outweighed by the benefits provided by Stripe's services. Moreover, Plaintiffs could certainly have avoided the injury they allege by paying attention to Instacart's disclosures regarding data collection.

Plaintiffs' claim fares no better under the third balancing test, which requires that "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id*. Plaintiffs do not allege that Stripe's data collection practices threaten competition, and, for the reasons discussed above, Plaintiffs' claims tethered to statutory and public policy privacy rights fail to establish any violations. *Id.* at 990.

### G.    Plaintiffs Have Not Pled an Unjust Enrichment Claim: Ninth Cause of Action

As with Plaintiffs' other causes of action, Plaintiffs' unjust enrichment claim is defeated by their consent. "Unjustified enrichment is enrichment that lacks an adequate legal basis . . . . an ineffective transaction for these purposes is one that is *nonconsensual*." Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011) (emphasis in original).

Further, in California, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). At best, it is a species of fraud, but as noted Plaintiffs have alleged no fraud. *See Moose Run, LLC v. Libric*, No. 19-cv-01879-MMC, 2020 WL 3316097, at *5 (N.D. Cal. June 18, 2020) ("A cause of action titled 'unjust enrichment,' however, can be construed as a claim that the plaintiff is entitled to restitution under the theory 'the defendant obtained a benefit from the plaintiff by fraud.'"). At any rate, to proceed on a theory based on fraud, the plaintiff "choose[s] not to sue in tort, but instead to seek restitution on a quasi-contract theory (an election referred to at common law as waiving the tort and suing in assumpsit)." *Id*. Here, however, Plaintiffs did not "waiv[e] the tort," but, rather, chose to "sue in tort," by also proceeding with their tort and statutory claims. Under such circumstances, Plaintiffs are not entitled to restitution under a quasi-contract theory. *See id; In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims") (citing cases). Nor, in any event, have Plaintiffs alleged that they were "misled or that defendant breached any express or implied covenant as it relates" to the alleged conduct. *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020).

### V.    CONCLUSION

For these reasons, the Complaint should be dismissed with prejudice.

DATED:  February 5, 2021            MUNGER, TOLLES & OLSON LLP


By:      */s/ Jonathan H. Blavin*

JONATHAN H. BLAVIN

Attorneys for Defendant Stripe, Inc.

Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS