JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
ROSEMARIE T. RING (State Bar No. 220769)
rose.ring@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

SARAH S. LEE (State Bar No. 311480)
sarah.lee@mto.com
LAURA M. LOPEZ (State Bar No. 313450)
laura.lopez@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendant
STRIPE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| JASEN SILVER, JILL LIENHARD, PATRICIA TYSINGER, VICTORIA WATERS, AND ALAINA JONES, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STRIPE, INC.,<br><br>Defendant. | Case No. 4:20-cv-8196-YGR<br><br>**DEFENDANT STRIPE, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>[*Filed concurrently with [Proposed] Order*]<br><br>DATE:    July 6, 2021<br>TIME:    2:00 p.m.<br>CTRM:    1<br>JUDGE:    Hon. Yvonne Gonzalez Rogers<br><br>Action Filed: November 20, 2020 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................................1

II.    FACTUAL ALLEGATIONS ..............................................................................................1

    A.     Stripe Elements Handles Payment Processing for Merchants ...................................1

    B.     Stripe Collects and Analyzes Data to Prevent Fraud ................................................3

    C.     Instacart's Privacy Policy Discloses Stripe's Activity ..............................................4

    D.     Procedural History.....................................................................................................6

III.   LEGAL STANDARD ..........................................................................................................7

IV.    ARGUMENT .......................................................................................................................7

    A.     Plaintiffs' Consent Forecloses All of their Claims....................................................7

    B.     Plaintiffs Fail to Allege any Unlawful Interception: First, Third, and Fourth
        Causes of Actions....................................................................................................12

    C.     Plaintiffs Fail to Allege any Unauthorized Use of a Device Primarily for
        Eavesdropping: Second Cause of Action ................................................................15

    D.     Plaintiffs' Claim Under Utah Code § 13-37-201 Fails: Fifth Cause of Action........16

    E.     Plaintiffs Cannot Meet the High Standard of a Privacy Violation Under the
        California Constitution and Common Law: Sixth and Seventh Causes of
        Action ......................................................................................................................17

          1.     Plaintiffs had no reasonable expectation of privacy in the data
              collected ......................................................................................................18

          2.     Plaintiffs fail to allege any "highly offensive" conduct .............................20

    F.     Plaintiffs Fail to Allege a UCL Claim: Eighth Cause of Action.............................22

    G.     Plaintiffs Have Not Pled an Unjust Enrichment Claim: Ninth Cause of
        Action ......................................................................................................................24

V.     CONCLUSION ..................................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................................7

*Astiana v. Hain Celestial Grp., Inc.,*
783 F.3d 753 (9th Cir. 2015)........................................................................................25

*Bassett v. ABM Parking Servs., Inc.,*
883 F.3d 776 (9th Cir. 2018)........................................................................................18

*Bauer v. Tacey Goss, P.S.,*
2012 WL 2838834 (N.D. Cal. July 10, 2012) ...............................................................2

*Bradley v. Google, Inc.,*
2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) .............................................................13

*Brodsky v. Apple Inc.,*
445 F. Supp. 3d 110 (N.D. Cal. 2020) .........................................................................13

*Cordas v. Uber Techs., Inc.,*
228 F. Supp. 3d 985 (N.D. Cal. 2017) ...........................................................................8

*Cramer v. Consol. Freightways, Inc.,*
209 F.3d 1122 (9th Cir. 2000)........................................................................................7

*Crawford v. Beachbody, LLC,*
2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ..................................................................8

*Crowley v. CyberSource Corp.,*
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......................................................................13

*Davis v. HSBC Bank Nevada, N.A.,*
691 F.3d 1152 (9th Cir. 2012)......................................................................................24

*Doe v. Epic Games, Inc.,*
435 F. Supp. 3d 1024 (N.D. Cal. 2020) (Gonzalez Rogers, J.)....................................25

*Faulkner v. ADT Sec. Servs., Inc.,*
706 F.3d 1017 (9th Cir. 2013)........................................................................................7

*Garcia v. Enter. Holdings, Inc.,*
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ......................................................................8, 11

*Gonzales v. Uber Techs., Inc.,*
305 F. Supp. 3d 1078 (N.D. Cal. 2018) .......................................................................14

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*Graham v. Noom, Inc.*,
2021 WL 1312765 (N.D. Cal. Apr. 8, 2021) ..................................................................15, 16

*Heeger v. Facebook, Inc.*,
2020 WL 7664459 (N.D. Cal. Dec. 24, 2020) .........................................................17, 18, 19, 25

*Hernandez v. Path, Inc.*,
No. 12-CV-01515 YGR, 2012 WL 5194120 (N.D. Cal. Oct. 19, 2012) ..................................14

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018)................................................................................................7

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ..............................................................................23, 24

*In re Apple and AT&T iPad Unlimited Data Plan Litig.*,
802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...................................................................................25

*In re Facebook Biometric Info. Priv. Litig.*,
185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................................................................8, 9

*In re Facebook, Inc., Consum. Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .....................................................................................22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)..............................................................................................14, 18

*In re Google Android Consumer Privacy Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013).......................................................................21

*In re Google Inc. Cookie Placement Consum. Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................................................................................................14

*In re Google, Inc. Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................................21, 24

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........................................................................16, 18, 19

*In re Iphone 4S Consumer Litig.*,
2014 WL 589388 (N.D. Cal. Feb. 14, 2014)............................................................................3

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...........................................................................20, 21

*In re Nickelodeon Consum. Privacy Litig.*,
827 F.3d 262 (3d Cir. 2016).....................................................................................................22

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*In re Yahoo Mail Litig.*,
  7 F. Supp. 3d 1016 (N.D. Cal. 2014) ...................................................................................18

*Javier v. Assurance IQ, LLC*,
  2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ..............................................................8, 10, 11, 12

*Kingston v. FCA US LLC*,
  2020 WL 2845282 (C.D. Cal. Mar. 25, 2020) ........................................................................2

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002)..............................................................................................13

*Lopez v. Apple, Inc.*,
  2021 WL 823122 (N.D. Cal. Feb. 10, 2021)...........................................................................13

*Low v. LinkedIn Corp.*,
  900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................................18, 19

*Marsh v. Zaazoom Sols., LLC*,
  No. C-11-05226-YGR, 2012 WL 952226 (N.D. Cal. Mar. 20, 2012) .....................................14

*Moose Run, LLC v. Libric*,
  2020 WL 3316097 (N.D. Cal. June 18, 2020) .......................................................................25

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*,
  2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ...................................................................16, 21

*Moretti v. Hertz Corp.*,
  2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) ........................................................................8

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ........................................................................7, 18, 20

*Perkins v. LinkedIn Corp.*,
  53 F. Supp. 3d 1190 (N.D. Cal. 2014) .................................................................................12

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).......................................................................14

*Smith v. Facebook, Inc.*,
  745 F. App'x 8 (9th Cir. 2018)..........................................................................................8, 11

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001)...............................................................................................7

*United States v. DE L'Isle*,
  825 F.3d 426 (8th Cir. 2016)..............................................................................................19

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*United States v. Hillaire*,
  857 F.3d 128 (1st Cir. 2017) ...................................................................................................19

*United States v. Pasha*,
  332 F.2d 193 (7th Cir. 1964) ...................................................................................................14

*Weimin Chen v. Sierra Trading Post, Inc.*,
  2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ........................................................................8

*Wesch v. Yodlee, Inc.*,
  2021 WL 1399291 (N.D. Cal. Feb. 16, 2021)..........................................................................22

*Yunker v. Pandora Media, Inc.*,
  2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .........................................................................14

**STATE CASES**

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006)..................................................................................................23

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011)..................................................................................................21

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009).......................................................................................................20, 21

*Hill v. NCAA*,
  7 Cal. 4th 1 (1994)..............................................................................................7, 18, 19, 20

*Kwikset Corp. v. Superior Court*,
  51 Cal. 4th 310 (2011).............................................................................................................22

*O'Brien v. O'Brien*,
  899 So. 2d 1133 (Fla. Dist. Ct. App. 2005).............................................................................13

*People ex rel. Harris v. Delta Air Lines, Inc.*,
  247 Cal. App. 4th 884 (2016)..................................................................................................23

*Pioneer Elecs. (USA) Inc. v. Superior Ct.*,
  40 Cal. 4th 360 (2007).............................................................................................................19

*State v. Roden*,
  179 Wash. 2d 893 (2014) .........................................................................................................13

*Susan S. v. Israels*,
  55 Cal. App. 4th 1290 (1997)..................................................................................................22

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*TBG Ins. Servs. Corp. v. Superior Ct.,*
   96 Cal. App. 4th 443 (2002) ...............................................................................................19

STATE STATUTES

Cal. Bus. & Prof. Code § 1798, *et seq.* ....................................................................................22, 23

Cal. Bus. & Prof. Code § 17200, *et seq.* ...................................................................7, 22, 23, 24

Cal. Bus. & Prof. Code § 17204 .....................................................................................................22

Cal. Bus. & Prof. Code § 22575, *et seq.* .................................................................................22, 23

Cal. Civ. Code § 1798.150 ..............................................................................................................23

Cal. Penal Code § 631 ....................................................................................................7, 13, 22, 23

Cal. Penal Code § 635 ................................................................................................7, 15, 16, 22, 23

Cal. Penal Code § 637.2 ..................................................................................................................16

Fla. Stat. Ann. § 934 ..........................................................................................................................7

Utah Code Ann. § 13-37-102 ..........................................................................................................16

Utah Code Ann. § 13-37-201 .....................................................................................................16, 17

Wash. Rev. Code Ann. § 9.73.030 ....................................................................................................7

FEDERAL RULES

Fed. R. Civ. Proc. 9 .........................................................................................................................23

Fed. R. Civ. Proc. 12 ..........................................................................................................................1

OTHER AUTHORITIES

Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011) ...............................7, 24

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on July 6, 2021 at 2:00 p.m., or such other date and time as may be ordered, Defendant Stripe, Inc. ("Stripe") will and hereby does move to dismiss Plaintiffs' First Amended Complaint ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   INTRODUCTION

Plaintiffs' FAC fails to address the fundamental deficiencies identified by the Court in its dismissal of their prior Complaint.

First, all of Plaintiffs' claims remain foreclosed by consent.  When Plaintiffs conducted transactions on Instacart, they consented to Instacart's use of third party partners, including Stripe, to help complete their transactions.  Plaintiffs continue to claim that they did not know third party partners like Stripe would be involved in their transactions, but this is directly contrary to Instacart's Privacy Policy.  As the Court previously stated, the "notion that third parties can't be used, I just don't think that that's the law for purposes of consent"; "it is not unreasonable" or "unexpected" for "an entity like Instacart to use third-party payment processors."  4/20/21 Hrg. Tr. ("Tr.") 3:4–5, 4:14–16.  None of Plaintiffs' amendments change the fact that they consented to the alleged conduct.

Apart from consent, Plaintiffs' handful of minor modifications to the FAC do not salvage their claims on the merits.  For example, Plaintiffs still fail to allege that Stripe *intercepted* any contents of communications, as the wiretapping laws at issue require.  Rather, they allege that Stripe *directly* received data from users—not through seizing any data that is being transmitted to Instacart.  Nor do Plaintiffs' common law claims fare better, as collecting data both to process transactions and prevent fraud is not highly offensive conduct, as required to be a cognizable tort.  As the Court stated, "[t]his is merely a commercial transaction that is then shared with a third-party vendor . . . to enact the transaction that the consumer wants."  Tr. 12:9–13.  And Stripe's transaction processing and fraud prevention services benefit the entire e-commerce ecosystem, including Plaintiffs.  For these reasons and others, the FAC should be dismissed with prejudice.

## II.   FACTUAL ALLEGATIONS

### A.   Stripe Elements Handles Payment Processing for Merchants

Stripe is "one of the largest online payment processors in the world."  FAC ¶ 2.  Its

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

customers include online merchants "who operate popular websites and mobile applications, such as Instacart." *Id*. One of Stripe's products is a software product called "Stripe Elements." *Id*. ¶ 24. By using Elements, merchants can "avoid the technical difficulties associated with developing and deploying their own payment forms into their websites and mobile applications." Compl. (Dkt. 1) ¶ 22.[1] Merchants can simply add Stripe's software code, called "Stripe.js," into their websites or applications, which allows Stripe's payment forms to be displayed to consumers. FAC ¶¶ 24, 26. The forms can be customized to match the "look and feel" of merchants' websites. *Id*. ¶ 27.

When consumers submit information into payment forms that use Stripe's software code, the payment and related information is sent directly to Stripe "without ever having it touch" the merchant's servers. FAC ¶ 34 (citing https://stripe.com/docs/stripe-js); *see id*. ¶¶ 5 ("the information never gets to the merchant"), 29 (the information "never reaches the merchant and instead resides on Stripe's servers"). A consumer's "submitting the payment form . . . causes [the] information to be sent to Stripe." Compl. ¶ 31. Once Stripe receives the information, Stripe "handles the collection and validation of the consumer's payment information, as well as processing the payment." FAC ¶ 24. The design of Stripe's software code to transmit information directly from consumers to Stripe, bypassing merchants, *id*. ¶¶ 30–31, benefits merchants as they do not need themselves to manage an environment compliant with strict data privacy standards, such as the Payment Card Industry Data Security Standard (PCI-DSS), in handling consumers' sensitive payment information. *See* Declaration of Jonathan H. Blavin ("Blavin Decl.") (Dkt. 22), Ex. A at 1 ("Because all sensitive information is handled by Stripe.js, it features simple PCI compliance . . . .").[2]

---

[1] Plaintiffs notably omitted certain factual allegations from the prior Complaint in the FAC that Stripe cited in its prior motion to dismiss. It is improper for Plaintiffs to delete allegations merely because they now believe they are unhelpful to their claims. Plaintiffs provide no reason for removing these allegations, and the Court should treat the prior allegations as binding judicial admissions. *See, e.g.*, *Bauer v. Tacey Goss, P.S.*, 2012 WL 2838834, *3 (N.D. Cal. July 10, 2012) (where party removed allegations in amended complaint, holding that factual allegations in prior complaint are "judicial admissions," and "when the party fails to provide a credible explanation for its 'error,' the Court may disregard the contradictory pleading"); *Kingston v. FCA US LLC*, 2020 WL 2845282, at *3 (C.D. Cal. Mar. 25, 2020) (where party following order granting motion to dismiss "removed allegations" court relied on, holding such allegations "are binding admissions" and plaintiffs "do not offer an explanation for why they have retracted" them).

[2] Stripe's Request for Judicial Notice (Dkt. 23) of exhibits to the Blavin Declaration was granted at the hearing on Stripe's prior motion to dismiss. Tr. 2:23–25 ("I do think it's appropriate to

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

**B.      Stripe Collects and Analyzes Data to Prevent Fraud**

Stripe receives several pieces of information from payment forms necessary to process payments, which may include consumers' "name and address, telephone number, email address, and . . . credit card information."  FAC ¶ 4.  Plaintiffs allege that Stripe also collects other information, including: "the consumer's IP address; the geolocation of the consumer['s] . . . device; the name of the consumer's bank or card issuer; whether or not the consumer had sufficient funds for the transaction; the time of day a consumer makes a purchase; other processing codes returned by the consumer's bank, such [*sic*] 'do not honor' codes or those relating to stolen cards; [] whether the consumer later disputes the charge," "URL[s] the user visits on the merchant's site," and "[the] consumer's mouse movements and clicks" and "keystrokes."  *Id*. ¶¶ 7, 40.  Plaintiffs further allege that Stripe's code "installs tracking cookies on consumers' computers and mobile devices, so that Stripe can track their purchasing behavior across its vast merchant network."  *Id*. ¶ 8.

As Plaintiffs allege, Stripe analyzes the data it receives to fight and prevent fraud, which benefits both merchants and consumers whose cards may be being used without their permission.  FAC ¶ 35 (citing https://stripe.com/radar ("Radar scans every payment using thousands of signals from across the Stripe network to help detect and prevent fraud.")); Compl. ¶ 35 (Stripe uses this information "to assess risk and predict fraud").  The data is not used to market or advertise products to consumers, and the FAC does not allege that Stripe collects transaction-specific information or data on consumers' product preferences.  Stripe's fraud prevention tool, called Radar, analyzes the data through machine learning to detect and prevent fraudulent transactions before they occur.  *See generally* Blavin Decl., Ex. B (https://stripe.com/radar).  For example, Stripe analyzes the use of a card associated with a "single device profile" and against IP addresses to "identify IP spoofing and proxy usage" by potentially bad actors.  *Id*. at 4.

To help detect and prevent fraud, Stripe creates "Risk Insights" profiles for users.  FAC ¶ 10, Fig. 1.  Plaintiffs allege that Stripe makes the information in the Risk Insights profiles "available to

grant, in light of the nature of the complaint, to grant the Request for Judicial Notice.").  The Court may therefore consider these exhibits for the instant motion.  *E.g.*, *In re Iphone 4S Consumer Litig.*, 2014 WL 589388, at *1 (N.D. Cal. Feb. 14, 2014) (relying on documents submitted in support of Apple's prior motion to dismiss and that the Court previously judicially noticed and granting Apple's motion to dismiss the amended complaint).

-3-                                    Case No. 4:20-cv-8196-YGR
DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

its merchant customers" such that the information "could be accessed by *any* Stripe customer who processed a payment for that particular consumer." *Id*. ¶ 38 (emphasis in original). The information in the Risk Insights profiles is limited, however, and constitutes: (1) an "elevated risk" score, or Radar's numeric assessment of risk based on aggregated data (but does not include the underlying data itself); (2) analysis of fraud risk based on aggregated data regarding the user which again is not disclosed to the merchant (e.g., authorization rate for transactions); and (3) limited personal data that merchants *already receive* from consumers when users visit their websites, including their names, addresses, IP addresses, device information, and billing information. *Id*. ¶ 10, Fig. 1.

Plaintiffs do not allege that Stripe takes personal data from consumers and provides it to all of its merchant customers, including merchants that have no connection to the consumers. Nor do they allege that Stripe provides personal data to merchants for marketing or advertising purposes. Instead, Plaintiffs allege a consumer's Risk Insights profile is only available to a merchant if that specific consumer opted to visit a merchant's online marketplace, FAC ¶ 38, and the profile consists of Stripe's aggregated analysis of fraud risk—based on underlying data that is *not* disclosed to merchants—and personal information that the merchant would *already* be receiving to process the consumer's transaction, *id*. ¶ 10, Fig. 1. The profile contains targeted information to allow Stripe and its merchant customers to determine the likelihood that a particular user is a machine bot or a bad actor. *Id*. Plaintiffs do not allege (nor can they) that the profiles assess credit worthiness or are used for any other purposes.

### C. Instacart's Privacy Policy Discloses Stripe's Activity

All of the named Plaintiffs assert claims premised on their purchase of items from only one merchant, Instacart. *See* FAC ¶¶ 55–118. Plaintiffs conducted their Instacart transactions by completing information on Instacart's "checkout page." *Id*. ¶ 30, Fig. 2; *id*. ¶¶ 59, 72, 84, 97, 110. Instacart's checkout page contains Stripe's software code, and the payment information that a consumer enters is sent directly to Stripe without ever being acquired by Instacart. *Id*. ¶¶ 30, 34.

When Plaintiffs placed their orders with Instacart, they agreed to be bound by its Privacy Policy. The relevant language on the checkout page, as shown in the FAC, provides:

-4-   Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

> By placing your order, you agree to be bound by the
> Instacart Terms of Service and Privacy Policy. Your

FAC ¶ 30, Fig. 2.  The "Terms of Service" and "Privacy Policy" text on the checkout page provides hyperlinks to the full text of these documents, which users can review before placing an order.  *Id*.; Blavin Decl. ¶¶ 4–5.  To complete their orders, Plaintiffs then clicked a green "Place Order" button:

> Place order

FAC ¶ 30, Fig. 2.  Each Plaintiff alleges that he or she submitted orders on Instacart by clicking the "Place Order" button on the checkout page.  *Id*. ¶¶ 61, 74, 86, 99, 112.

The Instacart Privacy Policy expressly discloses the sharing of information with parties like Stripe to provide the payment processing and fraud detection services alleged in the FAC.  Blavin Decl., Ex. C.[3]  The Privacy Policy states that Instacart "need[s] to share information about you and your order with the other parties who help enable the service.  This includes, for example . . . the payment processing partner(s) that we use to validate and charge your credit card."  *Id*. at 3, § IV.  It also discloses that Instacart may "share information with third parties to process information on our behalf or to otherwise provide certain services," and "may share your information when [it] believe[s] that the disclosure is reasonably necessary to . . . prevent, detect, or otherwise handle fraud . . . ."  *Id*. at 3–4, § IV.  The Policy further states that the information Instacart collects and may share with third parties includes "name," "email address, "address," "phone number," "credit card information," "precise location data," "IP address of your device, information about the browser, operating system and/or app you are using, unique device identifiers, pages that you navigate to and links that you click, searches that you run on the Services, and other ways you interact with the Services."  *Id*. at 1–2, § II; *see also id.* at 3–4, § IV; *id*. at 5, § VIII ("We disclose the following categories of personal information to third parties for our commercial purposes: identifiers, demographic information, commercial information, relevant order information, internet

---

[3] Instacart's prior Privacy Policy, Blavin Decl., Ex. D (Dkt. 22-4), contains identical disclosures and would have applied to Plaintiff Victoria Waters' May 14, 2020 purchase, FAC ¶ 93. Instacart's current Privacy Policy last updated on June 19, 2020, Blavin Decl., Ex. C (Dkt. 22-3), applies to all other purchases of the named Plaintiffs.  *See* FAC ¶¶ 55, 68, 80, 106.

activity, geolocation data, sensory information, and inferences.")  The Privacy Policy thus unambiguously states that Instacart may disclose to its payment processing partners like Stripe consumers' credit card and payment information as well as their device information, IP address, geolocation data, Internet activity, browser activity, and other information allegedly collected.

The Privacy Policy further discloses that Instacart and "our partners" "use various technologies to collect information, including but not limited to cookies, pixels, scripts, and device identifiers." *Id*. at 2, § II.  These include "persistent cookies (which only expire when you choose to clear them from your browser), pixels, scripts, and other identifiers to collect information from your browser or device that helps us do things such as understand how you use our services and other services." *Id*.  The Privacy Policy further discloses that Instacart and its "partners" may "use these technologies to collect information about your online activity over time and across different websites or online services." *Id*.  It also notes that users may "block cookies or adjust settings for notifications when a cookie is set." *Id*.  This language thus discloses that Instacart's partners, including Stripe, may install software on users devices to gather information about their online activity across different sites and services.

### D.    Procedural History

Stripe moved to dismiss the original Complaint on February 5, 2021.  Dkt. 21.  On April 20, 2021, the Court held a hearing and granted the motion.  Dkt. 43.  At the hearing, the Court noted that it "fundamentally disagree[s] with [Plaintiffs'] theory," but, at Plaintiffs' request, granted leave to amend the Complaint.  Tr. 21:19–22:5.

The FAC makes no material changes to alter the Court's ruling on Stripe's prior motion to dismiss.  Plaintiffs only make a handful of changes, including to allege that Stripe collects certain additional information (mouse clicks, keystrokes, and URLs the user visits on the merchant's site); Plaintiffs provide no supporting factual allegations for these conclusory, speculative assertions. FAC ¶¶ 7, 40.  Plaintiffs also add the allegation that cookies are installed by Stripe on the merchant's website before the user accesses the payment form.  *Id*. ¶ 8.  Finally, Plaintiffs add speculative statements about how Stripe's alleged activities "open consumers to the possibility of identity theft, credit card theft, and fraud."  *Id*. ¶¶ 39, 181.  Such statements are also unsupported by any factual

assertions and contradict the allegations in their prior Complaint and FAC that allege Stripe's activities do the exact opposite and in fact help to detect and prevent fraud.  FAC ¶ 35, Compl. ¶ 35. Plaintiffs bring the same nine causes of action they asserted in the prior Complaint.[4]

## III.   LEGAL STANDARD

The FAC must be dismissed if it does not "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  Although well-pleaded allegations of material fact are taken as true, *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013), the Court does not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## IV.   ARGUMENT

### A.   Plaintiffs' Consent Forecloses All of their Claims

The Court previously found that Plaintiffs consented to all of the alleged conduct in the Complaint.  Tr. 2:25–3:3 ("it appears to me . . . that they have consented").  Plaintiffs' minor changes to the FAC do nothing to overcome the fact that the challenged conduct is disclosed by Instacart's Privacy Policy.  All of Plaintiffs' claims remain foreclosed by consent.[5]

Courts consistently hold that terms of service and privacy policies, like Instacart's Privacy Policy here, can establish consent to the alleged conduct challenged under various state wiretapping

---

[4] Plaintiffs' claims are: (1) violation of the California Invasion of Privacy Act ("CIPA"), Penal Code section 631; (2) violation of CIPA, Penal Code section 635; (3) violation of the Florida Security of Communications Act, Florida Statutes section 934; (4) violation of the Revised Code of Washington, section 9.73.030; (5) violation of the Utah Notice of Intent to Sell Nonpublic Personal Information Act, Utah Code section 13-37; (6) invasion of privacy under the California Constitution; (7) intrusion upon seclusion; (8) violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, *et seq.*; and (9) unjust enrichment.

[5] User consent is a defense to all of the claims alleged.  *E.g.*, Cal. Penal Code § 631(a) (prohibits wiretapping "without the consent of all parties"); *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072 (N.D. Cal. 2016) (consent a defense under CIPA); *Cramer v. Consol. Freightways, Inc.*, 209 F.3d 1122, 1130, n.9 (9th Cir. 2000) (claim under Cal. Penal Code "Section 635 . . . depends on consent"); Fla. Stat. Ann. § 934.03(2)(d) (permits interception of communication with "consent" of parties); Wash. Rev. Code Ann. §§ 9.73.030(1) (a)-(b) (prohibits interception without "consent of all the participants"); *Hill v. NCAA*, 7 Cal. 4th 1, 26 (1994) (for invasion of privacy claim, "voluntary consent" is a defense); Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011) (enrichment must be "*nonconsensual*" (emphasis in original)); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1124 (9th Cir. 2018) (UCL claim dismissed "because [plaintiffs] did consent to" conduct).

statutes and related claims.  *See Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018) (consent established for wiretapping claims given that "Terms and Policies contain numerous disclosures related to information collection on third-party websites"); *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *2 (N.D. Cal. Mar. 9, 2021) (granting motion to dismiss CIPA and related claims based on consent; "Consent generally defeats privacy claims"); *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1135–37 (N.D. Cal. 2015) (dismissing CIPA claim where app provider's terms and privacy policy provided consent for the alleged disclosures).  Further, it is well settled that "[a] binding contract is created if a [p]laintiff [i]s provided with an opportunity to review the terms of service in the form of a hyperlink," and it is "sufficient to require a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button as long as the user has access to the terms of service." *Moretti v. Hertz Corp.*, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (internal quotation marks omitted); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1166 (N.D. Cal. 2016) (user agreement enforceable where user had to "take some action—a click of a dual-purpose box—from which assent might be inferred.").[6]

Plaintiffs do not and cannot meaningfully dispute they are bound by Instacart's Privacy Policy.  They allege they placed orders on Instacart by clicking the "Place Order" button on the checkout page.  FAC ¶¶ 61, 74, 86, 99, 112.  The checkout page expressly provides that clicking the "Place Order" button constitutes agreement to the Privacy Policy and links to the complete text of the Privacy Policy.  *See supra* at 5–6; FAC ¶ 30, Fig. 2 ("By placing your order, you agree to be bound by the Instacart Terms of Service and Privacy Policy." (including hyperlinks)); Blavin Decl. ¶¶ 4–5.  Plaintiffs were therefore "provided with an opportunity to review the terms" of the Privacy Policy.  *Crawford v. Beachbody, LLC*, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014).  They then took an affirmative step—clicking the "Place Order" button—to acknowledge that they

---

[6] *See also Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990–91 (N.D. Cal. 2017) (plaintiff agreed to terms when he clicked "DONE" to complete sign-up page stating: "By creating an Uber account, you agree to the Terms & Conditions and Privacy Policy."); *Weimin Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *3 (W.D. Wash. Aug. 6, 2019) (Plaintiff consented on "Checkout" where user "does not need to scroll beyond the 'Place my Order' button to find the Consent line, which explicitly states that the user agrees to the 'Terms' by placing the purchase order.")

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

were agreeing to the terms of the Privacy Policy. That is "enough to form a contract." *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d at 1166.

The terms of Instacart's Privacy Policy explicitly cover all of Stripe's conduct alleged in the FAC. The FAC alleges that "Stripe handles the collection and validation of the consumer's payment information, as well as processing the payment." FAC ¶ 24. It asserts that Stripe receives consumers' "payment information" (credit card number, name, address, contact information), as well as their IP address, device geolocation, name of the bank or card issuer, whether they had sufficient funds for the transaction, the time of the purchase, and "processing codes" returned by the bank, such as "do not honor codes" or those relating to stolen cards, and mouse movements and clicks, and keystrokes. *Id*. ¶ 7. The FAC also alleges that Stripe collects "URL[s] the user visits on the merchant's site," *id*. ¶ 40, and "installs tracking cookies on consumers' computers and mobile devices, so that Stripe can track their purchasing behavior across its vast merchant network" and the cookies "begin tracking the consumer's behavior on the website before he or she even gets to a payment form," *id*. ¶ 8. Plaintiffs themselves allege that Stripe uses this information to assess risk and prevent fraud. *Id*. ¶ 35 ("Stripe leverages this data to assess the risk associated with particular consumer and their transactions"); *see also* Compl. ¶ 35 (Stripe uses information to "assess risk and predict fraud"). The FAC contains no allegation that the information is used for any other purpose, including marketing or assessing credit worthiness.

The Instacart Privacy Policy discloses this precise conduct. It states that "we need to share information about you and your order with the other parties who help enable the service. This includes, for example . . . the payment processing partner(s) that we use to validate and charge your credit card." Blavin Decl., Ex. C at 3, § IV. It also discloses that Instacart may "share information with third parties to process information on our behalf or to otherwise provide certain services," and "may share your information when [it] believe[s] that the disclosure is reasonably necessary to . . . prevent, detect, or otherwise handle fraud . . . ." *Id*. The Privacy Policy states that the information Instacart collects and may share with third parties includes "name," "email address," "address," "phone number," "credit card information," "precise location data," "IP address of your device, information about the browser, operating system and/or app you are using, unique device

-9-                                     Case No. 4:20-cv-8196-YGR

identifiers, pages that you navigate to and links that you click, searches that you run on the Services, and other ways you interact with the Service." *Id*. at 1–2, § II; *see also id.* at 3–4, § IV; *id*. at 5, § VIII ("We disclose the following categories of personal information to third parties for our commercial purposes: identifiers, demographic information, commercial information, relevant order information, internet activity, geolocation data, sensory information, and inferences."). This language makes clear to consumers that Instacart may disclose to its payment processing partners like Stripe their credit card and payment information as well as their device information, IP address, geolocation data, website and Internet activity, and related information.[7]

The Privacy Policy's statement that information may be shared with partners to prevent fraud and handle other security issues also covers Stripe's alleged collection of consumer data to detect fraud and its sharing of Risk Insights analyses with merchants to assist in their operations. And as noted, the Risk Insights profiles consist of Stripe's aggregated analysis of fraud risk—based on underlying data that is *not* disclosed to merchants—and personal information that the merchant would *already* be receiving to process the consumer's transaction. FAC ¶ 10, Fig. 1; *supra* at 2–4.

The Privacy Policy also discloses the use of cookies and other tracking devices. It states that "[w]e" and "our partners . . . use various technologies to collect information, including but not limited to cookies, pixels, scripts, and device identifiers." Blavin Decl., Ex. C at 2, § II. These include "persistent cookies (which only expire when you choose to clear them from your browser), pixels, scripts, and other identifiers to collect information from your browser or device that helps us do things such as understand how you use our services and other services." *Id*. The Policy also states that Instacart and its "partners" may "use these technologies to collect information about your online activity over time and across different websites or online services." *Id*. The Privacy Policy therefore clearly discloses that Instacart's partners, including Stripe, may install software on

---

[7] Plaintiffs suggest that certain alleged conduct (e.g., the installation of cookies) may occur before the consumer submits the payment form. This is irrelevant for purposes of consent because each of the named plaintiffs here indisputably consented to the Privacy Policy. *See Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) (holding privacy policy "gives fair notice that [the plaintiff] consents to actions that may have already taken place" and the plaintiff's "retroactive consent to data collection valid" where plaintiffs alleged defendants collected "keystrokes, mouse clicks, data entry, and other electronic communications" before agreeing to policy).

users' devices to gather information about online activity and how users interact with browsers—including mouse movements and clicks and keystrokes—across Stripe and different sites.[8]

Plaintiffs nonetheless assert that Instacart's Privacy Policy does not cover third parties and that their consent is limited to payment processing, and no other conduct. FAC ¶¶ 46, 48. Both positions are contrary to the plain language of the Privacy Policy. As shown above, and as the Court previously found, the Privacy Policy expressly covers third-party partners like Stripe. Tr. 4:12–17 ("[T]he consent provision says . . . that the information goes to Instacart and its partners. It is not unreasonable for an entity like Instacart to use third-party payment processors. I mean, it's not. It's not unreasonable. It's not unexpected."); Blavin Decl., Ex. C at 3–4, § IV (referring to Instacart's "payment processing partner(s)"); *id*. at 5, § VIII (referring to "third parties").

And the Privacy Policy expressly covers conduct beyond just payment processing activity. It states third parties like Stripe may install software to collect data on users' activities across websites and that such information may be used to detect and prevent fraud—the exact conduct alleged here. *Id*. at 2, § II (Instacart's partners may "collect information about your online activity"); *id*. at 3, § IV (Instacart "may share your information when [it] believe[s] that the disclosure is reasonably necessary to . . . prevent, detect, or otherwise handle fraud").

That such disclosures were provided by Instacart, and not directly by Stripe, is immaterial. Consent to the conduct of a third-party partner can be established via a website's disclosures. In *Javier v. Assurance IQ, LLC*, 2021 WL 940319, (N.D. Cal. Mar. 9, 2021), the court held exactly that. There, the plaintiff submitted personal data in an online form on Assurance's website, and the defendants allegedly collected "keystrokes, mouse clicks, data entry, and other electronic communications." *Id*. at *1. Assurance "partner[ed] with" ActiveProspect, who, similar to Plaintiffs' allegations regarding Stripe, provided Assurance "a 'javascript code that can be pasted

---

[8] Courts have dismissed CIPA and related claims based on even less specific language in a privacy policy. *E.g.*, *Smith*, 745 F. App'x at 8 (privacy policy disclosed that "[w]e collect information when you visit or use third-party websites and apps that use our Services. . . . This includes information about the websites and apps you visit, your use of our Services on those websites and apps, as well as information the developer or publisher of the app or website provides to you or us"); *Garcia*, 78 F. Supp. 3d at 1136–37 (privacy policy stated, stated "we may share your personal information with our agents, representatives, contractors and service provider").

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

into a form page'" to gather the "'electronic communications of visitors to websites.'" *Id*. The court dismissed the plaintiff's CIPA and California Constitution claims against both Assurance *and* ActiveProspect, based solely on Assurance's privacy policy. The court rejected the argument that the "policy did not disclose the exact conduct at issue," stating that it "clearly indicates that Assurance tracks activity on its website and may use third party vendors to do so." *Id*. at \*3–4. Although ActiveProspect was not mentioned by name in the Assurance privacy policy, it covered the "use of ActiveProspect" by stating "'We may use third party vendors to assist us with the Service,'" including "'monitoring and analyzing Site activity.'" *Id*. at \*3. And the policy covered "data sharing with ActiveProspect," by stating, "'[Y]ou consent to . . . the transfer of that data to . . . entities we engage to provide Services.'" *Id*. Other courts have held similarly. *See Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1213 (N.D. Cal. 2014) (plaintiffs consented to LinkedIn's collection of "Google Contacts" based on statements made by non-party Google).

Likewise here, Stripe is entitled to rely on disclosures made by Instacart, where those statements plainly show Plaintiffs consented to Instacart's partners' (including its "payment processing partners") collection and use of the very information Plaintiffs challenge in this case. No court has ever adopted Plaintiffs' suggestion that every third party partner or vendor of a website has to separately obtain consent to their own privacy policy from every visitor to that site. And with good reason, as requiring consumers to agree to separate privacy policies from potentially dozens of third parties, including payment processors, credit card companies, shipping and delivery companies, and advertising companies, would drastically impede e-commerce and merchants' and consumers' abilities to conduct online transactions efficiently. As the Court previously found, that is not the law. Tr. 3:4–5 ("The notion that third parties can't be used, I just don't think that that's the law for purposes of consent . . . it's not only reasonable, it's explicit.").

**B.    Plaintiffs Fail to Allege any Unlawful Interception: First, Third, and Fourth Causes of Actions**

The Court previously concluded that Plaintiffs, apart from consenting to the alleged conduct, failed to allege any unlawful interception as required to state a violation of the California, Florida, and Washington state wiretapping statutes. Tr. 11:1–7 ("I just don't agree with your view

that there was an interception just because Instacart was using a third-party vendor . . . I just don't think that's either the intent of the statute or that the allegations fall within the scope of the statute.")  Plaintiffs have added nothing to the FAC to change this outcome, and in fact have only added allegations that confirm there was no "interception" within the meaning of these statutes.

An unlawful interception under the federal Wiretap Act requires an "acquisition contemporaneous with transmission," or an electronic communication that is "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).  These requirements apply equally to CIPA and Plaintiffs' Florida and Washington wiretapping statutory claims.[9]  Further, simply offering conclusory allegations that parrot the standard and assert that communications were "intercepted" or "eavesdropped" upon, as Plaintiffs have added, FAC ¶ 133, are not entitled to weight on a motion to dismiss.  *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1268 (N.D. Cal. 2001) ("The Court need not accept a conclusory allegation that conduct alleged in the complaint constituted an interception"); *Lopez v. Apple, Inc.*, 2021 WL 823122, at *3 (N.D. Cal. Feb. 10, 2021) (disregarding allegation "in a conclusory fashion, that their communications were intercepted").

Plaintiffs repeatedly allege that consumers' information is sent directly to Stripe and not the merchant.  *See* FAC ¶ 5 ("the information never gets to the merchant"); *id*. ¶ 29 ("the information . . . never reaches the merchant"); *id.* ¶ 34 (Stripe receives "the sensitive information within an Element without ever having it touch your [i.e., the merchant's] server"); Compl. ¶ 31 (a consumer's "submitting the payment form . . . causes [the] information *to be sent to Stripe*" (emphasis added)).  This Court and other courts in this District have held in similar circumstances that such direct transmissions between the sender and the recipient do not constitute "interceptions"

---

[9] *See Bradley v. Google, Inc.*, 2006 WL 3798134, at *6 (N.D. Cal. Dec. 22, 2006) ("Like its federal counterpart, these sections of [CIPA] require the interception of an electronic communication."); *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 125 (N.D. Cal. 2020) ("The CIPA . . . requires the 'interception of an electronic communication'"); Cal. Penal Code § 631(a) (communication is acquired "while the same is in transit").  This standard also applies to the Florida and Washington wiretapping statutes.  *O'Brien v. O'Brien*, 899 So. 2d 1133, 1136 (Fla. Dist. Ct. App. 2005) ("electronic communications, in order to be intercepted, must be acquired contemporaneously with transmission"); *State v. Roden*, 179 Wash. 2d 893, 904 (2014) (to intercept means to "stop before arrival or interrupt the progress or course").

-13-                                      Case No. 4:20-cv-8196-YGR

within the meaning of the wiretap statutes, as no communication is "stopped" or "seized" in transmission.  *See*, *e.g.*, *Hernandez v. Path, Inc.*, No. 12-CV-01515 YGR, 2012 WL 5194120, at *3, 5 (N.D. Cal. Oct. 19, 2012) (dismissing claims under Wiretap Act and CIPA because "[a]lthough Path allegedly transmitted the Class Members' Contact Address Books from the Class Members' mobile devices *to Path's servers*, Path did not 'intercept' a 'communication' to do so" (emphasis added)); *Marsh v. Zaazoom Sols., LLC*, No. C-11-05226-YGR, 2012 WL 952226, at *17 (N.D. Cal. Mar. 20, 2012) (where defendants were direct "recipients" of data, plaintiff failed to allege they "acquired the information by capturing the transmission of information that was otherwise in the process of being communicated to another party"; they "did not stop, seize, or interrupt a communication"); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *7–8 (N.D. Cal. Mar. 26, 2013) (where plaintiff "provided his PII to Pandora," Pandora did not "intercept" such data).[10]

Plaintiffs allege they did not *intend* to send their information to Stripe, FAC ¶ 133, but their mistaken belief is irrelevant.  Courts consistently hold that a party's subjective beliefs regarding the intended recipient are immaterial to whether an "interception" occurred.  *E.g.*, *United States v. Pasha*, 332 F.2d 193, 198 (7th Cir. 1964) ("Although the callers in the instant case were unaware that they were not being heard by the intended receivers and some were even misled into believing they were talking to one or the other of the defendants, the conversations between the callers and the agent cannot be said to have been intercepted."); *In re Google Inc. Cookie Placement Consum. Priv. Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) (citing *Pasha*; "[J]ust because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping"); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1087 (N.D. Cal. 2018) (dismissing CIPA claim; "That Uber was pretending to be a legitimate Lyft rider is of no moment; Plaintiff has still not alleged [an] interception").

---

[10] This is not a case where the information allegedly was transmitted from the consumer to the merchant website, and Stripe installed code making a *duplicate* copy of that information at the point of transmission, directing the duplicated content to its own servers.  *Cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 & n.9 (9th Cir. 2020) (holding that plaintiffs stated claims under Wiretap Act and CIPA where Facebook duplicated and transmitted "GET requests" that were intended for website recipient; noting that defendant must "stop, seize, or interrupt in progress or course before arrival" for interception to occur); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (plaintiff adequately alleged "interception" by Navistone, where plaintiff caused "one signal to travel to his computer and then through his browser to Moosejaw's server" and his "browser caused a parallel signal to be sent to NaviStone").

-14-   Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

As the Court previously explained, the conduct here is not a wiretap; "[t]his is merely a commercial transaction that is then shared with a third-party vendor to enact [] the transaction that the consumer wants." Tr. 12:9–13. The allegations are similar to a recent case, *Graham v. Noom, Inc.*, 2021 WL 1312765 (N.D. Cal. Apr. 8, 2021). There, the plaintiffs brought CIPA and related privacy claims against Noom, a weight loss website, and FullStory, a vendor that provides software services to Noom. The plaintiffs claimed that FullStory's software records visitors' website activities, "such as their keystrokes, mouse clicks, and page scrolling." *Id*. at \*1. The court rejected the CIPA claim and held there was no unlawful interception by FullStory because "FullStory is a vendor that provides a software service that captures its clients' data, hosts it on FullStory's servers, and allows the clients to analyze their data . . . FullStory is an extension of Noom. It provides a tool . . . that allows Noom to record and analyze its own data in aid of Noom's business." *Id*. at \*5. Here too, Stripe serves as a third party vendor and provides tools for online merchants like Instacart to conduct safe and secure transactions. Stripe's collection of data is simply not an unlawful interception.[11]

### C.    Plaintiffs Fail to Allege any Unauthorized Use of a Device Primarily for Eavesdropping: Second Cause of Action

Plaintiffs have added no new allegations in the FAC in support of their second cause of action under Section 635 of CIPA. FAC ¶¶ 140–148. Section 635 prohibits the assembly, sale, possession or furnishing to another of any device "which is primarily or exclusively designed or intended for eavesdropping upon the communication of another . . . ." Cal. Penal Code § 635. The Court previously held that the conduct alleged does not "fall[] within the scope of [Section] 635." Tr. 13:19–21. Because Plaintiffs do not and cannot allege any additional factual allegations in support of this claim, the Court should dismiss this claim.

As a threshold matter, Plaintiffs have failed to allege any "eavesdropping," so there is no device "primarily . . . intended for eavesdropping," nor is there any injury. As explained above,

---

[11] For the reasons explained in Stripe's prior motion to dismiss, Plaintiffs' first, third and fourth causes of actions also should be dismissed because Plaintiffs fail to allege that Stripe acquired the substantive "contents" of any communications. Dkt. 21 at 12–15.

*supra* at 12–15, Plaintiffs fail to allege any "interception" of their communications. Instead, the FAC confirms that Stripe's software code is designed to send consumer information directly to Stripe and allows Stripe to analyze and use the data for the benefit of its merchant partners and consumers alike. *E.g.,* FAC ¶¶ 5, 29, 34. Where, as here, Stripe is operating as a "service provider," "[i]t is not a third-party eavesdropper." *Noom,* 2021 WL 1312765, at \*5. Because there has been no eavesdropping, Plaintiffs have not been injured and lack a private right of action to bring a Section 635 claim. *Id.* at \*7 (where no eavesdropping occurred, plaintiffs have no private right of action under Section 635 (as required by Cal. Penal Code § 637.2(a))).

Apart from the lack of injury, this cause of action is also not viable because Plaintiffs' own allegations confirm that Stripe's services are not "primarily or exclusively designed or intended for eavesdropping," but are instead intended to assist merchants and consumers in safely processing payment transactions, as well as to conduct fraud monitoring, prevention, detection, and financial compliance activities. *See supra* at 2–4.[12]

### D. Plaintiffs' Claim Under Utah Code § 13-37-201 Fails: Fifth Cause of Action

Plaintiffs' claim under the Utah Notice of Intent to Sell Nonpublic Personal Information Act fails on its face. As Stripe explained in its prior motion, the allegations do not fit within the text of the statute. Plaintiffs do not allege any additional facts in the FAC to cure this deficiency.

The Utah statute requires a commercial entity that "enters into a consumer transaction" to give notice to a consumer before the entity discloses nonpublic personal information to a third party for compensation. Utah Code Ann. § 13-37-201(1). A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other written or oral transfer or disposition," or "a transaction." Utah Code Ann. § 13-37-102(4)(a). Under Plaintiffs' own allegations, Plaintiffs did not conduct any "transaction" with Stripe, and instead conducted transactions *with Instacart*. In fact, Plaintiffs claim they did not know Stripe was involved in their transactions at all. FAC ¶¶ 62

---

[12] In addition, computer code absent a physical device—the exact product Stripe allegedly offers—does not constitute a "device" within the meaning of CIPA. *In re Google Location Hist. Litig.,* 428 F. Supp. 3d 185, 193 (N.D. Cal. 2019) ("[s]oftware like Google Maps, Chrome, etc. are not 'devices' within the meaning of CIPA'"); *Moreno v. San Francisco Bay Area Rapid Transit Dist.,* 2017 WL 6387764, at \*4–5 (N.D. Cal. Dec. 14, 2017) (same).

-16-    Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

("Mr. Silver did not know that Stripe was involved in the transaction at all"), 75 (same as to Plaintiff Lienhard), 87 (same as to Plaintiff Tysinger), 100 (same as to Plaintiff Waters), 113 (same as to Plaintiff Jones). At most, Plaintiffs allege Stripe "benefitted" from Plaintiffs' consumer transactions with Instacart. FAC ¶ 167. This claim therefore fails as a matter of law.

Even if Stripe did somehow enter into "a consumer transaction" with Plaintiffs, the claim still fails under the statute's exception for disclosures related to business services. The exception provides that "a commercial entity is not required to provide notice under this section if the disclosure of the nonpublic personal information is related to the third party providing to the commercial entity services, including business outsource services." Utah Code Ann. § 13-37-201(5)(a)(i). According to Plaintiffs' own allegations, Stripe analyzes and discloses consumer information to process payments and detect fraud. Both are business services Stripe provides to its merchant customers, so any alleged disclosure of information is exempted from liability.

### E.  Plaintiffs Cannot Meet the High Standard of a Privacy Violation Under the California Constitution and Common Law: Sixth and Seventh Causes of Action

Plaintiffs' claims for invasion of privacy under the California Constitution and intrusion upon seclusion suffer several fundamental flaws and should also be dismissed.

As a preliminary matter, and as the Court previously concluded, Plaintiffs fail to plausibly allege they have been injured from the alleged conduct. Tr. 19:9–10 ("What happened that was so horrible to these plaintiffs? I'm struggling here."). They allege no injury resulting from the alleged collection of their data to process their own transactions, and to prevent fraudulent misuse of their own credit cards. Plaintiffs thus lack standing to bring either claim. *E.g., Heeger v. Facebook, Inc.*, 2020 WL 7664459, at *4 (N.D. Cal. Dec. 24, 2020) (plaintiffs "cannot be injured from the collection of IP addresses, and so lack Article III standing for the privacy claims under California common law, the California constitution, and CIPA").[13]

---

[13] Plaintiffs have added speculative allegations that Stripe's alleged activities "opens consumers to the possibility of identity theft, credit card theft, and fraud." FAC ¶ 39. But these are mere musings about the *possibility* of what could happen, and they contradict Plaintiffs' own allegations that Stripe's activities are actually intended to *prevent* fraud. *Id.* ¶ 35. The Court previously correctly concluded that such statements about the possibility of injury do not confer standing. Tr.

-17-                    Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

Moreover, Plaintiffs fail to allege the threshold elements of these claims. As the Court previously stated, Plaintiffs must meet the "high bar" of alleging "highly offensive" conduct; "normal commercial transactions" are not sufficient. Tr. 17:15–22; *see also In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 196 (N.D. Cal. 2019) ("The California Constitution sets a 'high bar' for establishing an invasion of privacy claim."). Courts treat the California Constitutional and common law prongs as "effectively identical." *In re Google Location Hist. Litig.*, 428 F. Supp. 3d at 196. When such claims are alleged together, as they are here, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 601; *Heeger*, 2020 WL 7664459, at *6. Plaintiffs' claims fail under both prongs.

**1.     Plaintiffs had no reasonable expectation of privacy in the data collected**

Plaintiffs lacked a reasonable expectation of privacy in the type of information allegedly collected. Where, as here, the "undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1039 (N.D. Cal. 2014); *Heeger*, 2020 WL 7664459, at *4, *6 (no reasonable expectation of privacy in IP addresses and generalized location data); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

At the outset "a plaintiff cannot have a reasonable expectation of privacy if she consented to the intrusion." *Opperman*, 205 F. Supp. 3d at 1072 (citing *Hill*, 7 Cal. 4th at 26). As discussed, Plaintiffs consented to the disclosure of the collected information by agreeing to Instacart's Privacy Policy, which clearly disclosed that information such as Plaintiffs' online activity, payment, and related device information could be shared with third party partners of Instacart, such as Stripe.

Further, as the Court previously concluded, Stripe's collection of such information is part of "normal commercial transactions," Tr. 17:21, and therefore falls within users' reasonable expectations of what may be collected during a transaction. *E.g.*, *United States v. Hillaire*, 857 F.3d

---

20:1–2 ("if it is hypothetical, it's not ripe"); *see also Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 777, 783 (9th Cir. 2018) (allegations that plaintiff was at "imminent risk" that his "property would be stolen and/or misused by identity thieves," does "not entail a degree of risk sufficient to meet the concreteness requirement" and is "too speculative for Article III purposes.").

128, 129–130 (1st Cir. 2017) (finding no reasonable expectation of privacy in credit card number and expiration date, because that is data routinely provided to third party retailers); *United States v. DE L'Isle*, 825 F.3d 426, 432–33 (8th Cir. 2016) (finding no reasonable expectation of privacy in credit card strips because, "in the normal course, all of the information found in the magnetic strips on . . . credit cards is identical to the information in plain view on the front of the cards"); *Pioneer Elecs. (USA) Inc. v. Superior Ct.*, 40 Cal. 4th 360, 372 (2007) (no reasonable expectation of privacy in release of consumer's information, including name, phone number and address despite lack of consent, where consumers provided information in defective product complaints).

Plaintiffs also allege that Stripe collects various technical information for its fraud detection and prevention services, including the consumer's IP address; the geolocation of the consumer (in fact, the geolocation information is based on the user's IP address); and device and operating system information. FAC ¶ 7. Courts routinely hold that this type of technical information, which websites customarily collect from users visiting their sites, does not fall within users' reasonable expectation of privacy. *E.g., Heeger*, 2020 WL 7664459, at *4, *6 ("[t]here is no legally protected privacy interest in IP addresses alone" or in collection of "location data"); *Low*, 900 F. Supp. 2d at 1025; *In re Google Location Hist.*, 428 F. Supp. 3d at 198 (no violation of privacy rights despite defendant's alleged "surreptitious collection and storage of comprehensive and highly sensitive location data").

And crucially, Plaintiffs do not allege they had a reasonable expectation of privacy in the payment and other technical information that was collected. Rather, Plaintiffs simply allege that they did not subjectively expect Stripe (as opposed to Instacart) to collect this data. FAC ¶¶ 60, 73, 85, 98, 111. But Plaintiffs' subjective expectations are irrelevant. "A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." *Hill*, 7 Cal. 4th at 37. Given the widespread use of online payment processing services like Stripe's, Plaintiffs' assertion that they expected to communicate only with the merchant, Instacart, and no one else, strains credulity. *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 451 (2002) (looking to norms within "21st Century computer-dependent businesses"). As the Court previously noted, "[i]t is not unreasonable for an entity like Instacart to use third-party payment processors." Tr. 4:14–15. Consumers are aware that payment processing companies like

Stripe, PayPal, and others, are commonly used by online merchants.  And even if there was no payment processing company like Stripe in the picture, Instacart would likely have to rely on its own bank to receive the payment information and to process the payment, and as noted, would collect this same device data as well.  It is implausible that Plaintiffs did not expect another entity to access their information, as needed to process the payment and to detect and prevent fraud, and even if they did, that subjective expectation certainly would not be reasonable.

### 2. Plaintiffs fail to allege any "highly offensive" conduct

The Court also previously concluded that the alleged conduct is not "highly offensive," Tr. 17:19, and none of Plaintiffs' amendments in the FAC change this outcome.  "Actionable invasions of privacy also must be 'highly offensive' to a reasonable person and 'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms.'" *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009) (citations omitted); *Opperman*, 205 F. Supp. 3d at 1077; *Hill*, 7 Cal. 4th at 26.  Plaintiffs' allegations do not meet this high bar: "[e]ven negligent conduct that leads to theft of highly personal information, including social security numbers, does not 'approach [the] standard' of actionable conduct under the California Constitution and thus does not constitute a violation of Plaintiffs' right to privacy." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).  "A court determining whether th[e] [offensiveness] requirement has been met as a matter of law examines all of the surrounding circumstances, including the degree and setting of the intrusion and the intruder's 'motives and objectives.'" *Hernandez*, 47 Cal. 4th at 295.

*First*, the degree of the intrusion is limited: as Plaintiffs allege, Stripe collects this data to process payments, and "to assess risk and predict fraud." *See supra* at 3.  Indeed, Plaintiffs do not allege that Stripe uses any such information for marketing purposes, nor do Plaintiffs allege that Stripe takes personal, sensitive data from consumers and provides it to *all* of its merchant customers.  Instead, Plaintiffs allege a consumer's Risk Insights profile is only available to a merchant if that specific consumer visits the merchant's online marketplace.  And the Risk Insights profile consists of Stripe's aggregated analysis of fraud risk—based on underlying data that is *not* disclosed to merchants—and personal information that the merchant would *already* be receiving to process the consumer's transaction.  *See supra* at 3–4.

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

*Second*, "[t]his case does not involve surveillance measures conducted for socially repugnant or unprotected reasons." *Hernandez*, 47 Cal. 4th at 297.  To the contrary, the alleged collection here is universal, commonplace, and routine "commercial behavior." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011).  In *Folgelstrom*, the plaintiff alleged that the defendant retailer routinely asked for customers' zip codes in credit card transactions, asked a credit agency to match their zip codes and credit card numbers to home mailing addresses, and then engaged in mail marketing using the addresses.  The court concluded that the plaintiffs did not have a legally protected private interest in their mailing addresses and that the retailer's conduct was not egregious, but "routine commercial behavior." *Id.* at 992.

Similarly here, the collection of payment information, as well as additional information required to process the payment and aid Stripe in detecting and preventing fraudulent transactions, is conventional, routine commercial behavior, and far from an egregious breach.  Indeed, information such as payment information, geolocation, IP Address, the name of the consumer's bank, and whether or not the consumer had sufficient funds for the transaction, FAC ¶ 7, is frequently shared by merchants and payment processing companies to ensure that payments are properly processed and that fraudulent transactions are quickly detected and prevented.

And courts in this District have "consistently refused to characterize the disclosure of common, basic digital information to third parties as serious or egregious violations of social norms." *In re Google, Inc. Priv. Pol'y Litig.*, 58 F. Supp. 3d 968, 985, 988 (N.D. Cal. 2014) (collection and disclosure of users' data, including to advertisers, did "not plausibly rise to the level of intrusion necessary to establish an intrusion claim"); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosure of "unique device identifier number, personal data, and geolocation information . . . does not constitute an egregious breach of social norms").[14]  Likewise, courts have

---

[14] *See also*, *e.g.*, *In re Google Android Consumer Privacy Litig.*, 2013 WL 1283236, at *1–2 (N.D. Cal. Mar. 26, 2013) (collection of "Plaintiffs' name, gender, zip code, App activity (including search terms or selections), geolocation data, and their phones' universally unique device identifiers" for purposes of providing "advertising services to App developers" not highly offensive); *Moreno*, 2017 WL 6387764, at *8 (dismissing constitutional privacy and intrusion claims and noting that "[i]n this age of mobile technology the Court cannot conclude that a reasonable user would consider it highly offensive or egregious that a voluntarily downloaded mobile application . . . utilizes the user's cell phone identifier and location data").

Case No. 4:20-cv-8196-YGR

DEFENDANT STRIPE, INC.'S MOTION TO DISMISS

held that "us[ing] third-party cookies" on websites is not "sufficiently offensive" to "survive a motion to dismiss." *In re Nickelodeon Consum. Privacy Litig.*, 827 F.3d 262, 294–95 (3d Cir. 2016). Instead, courts typically have only recognized such a claim with highly sensitive personal data, such as medical information. *E.g.*, *Susan S. v. Israels*, 55 Cal. App. 4th 1290 (1997).

### F.    Plaintiffs Fail to Allege a UCL Claim: Eighth Cause of Action

Plaintiffs' claim for violations of California's UCL also fails. At the outset, Plaintiffs have not pled sufficient injury to establish UCL standing. Plaintiffs are required to show they "lost money or property" because of the alleged conduct. Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011). Plaintiffs do not allege they paid any money or lost any property to Stripe. Plaintiffs allege in conclusory fashion that Stripe's activities "enabled it to charge transaction fees to merchants, the price of which the [Plaintiffs] covered through increased merchant fees." FAC ¶ 208. But courts have rejected such theories under the UCL where the plaintiffs did not allege they paid anything to the defendant. *E.g., In re Facebook, Inc., Consum. Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019) ("the plaintiffs here do not allege that they paid any premiums (or any money at all) to Facebook to potentially give rise to standing" for purposes of UCL claim and dismissing claim for failure to allege "lost money or property"); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (plaintiffs had not alleged they "surrender[ed] more or acquir[ed] less in a transaction than they otherwise would have" for purposes of UCL where they had not paid money to defendant).

Apart from standing, Plaintiffs fail to establish "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

***Unlawful Prong.*** Plaintiffs allege Stripe's conduct was unlawful because it violated (i) CIPA Sections 631 and 635; (ii) the California Online Privacy Protection Act of 2003 ("CalOPPA"), Cal. Bus. & Prof. Code § 22575, *et seq*.; and (iii) and the California Consumer Privacy Act of 2018 ("CCPA"), Cal. Bus. & Prof. Code § 1798, *et seq*. FAC ¶ 206. But Plaintiffs' conclusory allegations do not establish these predicate violations.

*First*, for the various reasons set forth above, Plaintiffs' causes of action under CIPA Sections 631 and 635 fail and cannot support a UCL violation. *Second*, Plaintiffs conclusorily

assert that Stripe has violated CalOPPA, which primarily addresses "the obligations of an operator of a commercial Web site or online service regarding the posting of a privacy policy on the Internet." *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 888 (2016). But Plaintiffs allege no specific facts in support of this claim (and at any rate, Stripe has a posted privacy policy, https://stripe.com/privacy). *Third*, the FAC asserts that Stripe has violated the CCPA, but again offers no explanation of how. Moreover, the CCPA has no private right of action and on its face states that consumers may not use the CCPA as a basis for a private right of action under any statute. Cal. Civ. Code § 1798.150(c) ("Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law."). Plaintiffs therefore fail to establish a single predicate violation for purposes of the unlawful prong.

*Fraudulent Prong.* As the Court previously explained, the fraudulent prong requires that Plaintiffs plead "heightened allegations with respect to the fraudulent allegations." Tr. 23:7–9; *see also In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) ("Claims stated under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b). . . . a party must state with particularity the circumstances constituting fraud or mistake. Plaintiffs must include an account of the time, place, and specific content of the false representations at issue."). Plaintiffs fail to state with particularity any fraudulent statement, nor the time, place, and specific content of any fraudulent representations.

To the extent Plaintiffs base their claim on omissions, Plaintiffs have failed to show Stripe had any affirmative duty to disclose its data collection practices. Tr. 23:10–11 ("If you're only claiming omissions, then you have to have a duty."); *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 838 (2006) ("[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL."). And even if Stripe did have a duty (it did not), there is simply no fraud because the data collection practices at issue are plainly disclosed in Instacart's Privacy Policy and Plaintiffs consented to the conduct.

*Unfair Prong.* Plaintiffs allege that Stripe's conduct was unfair because Stripe "intruded on communications . . . reasonably believed to be private." FAC ¶ 202. But as discussed above, Plaintiffs fail to show any violation of their privacy, so Plaintiffs necessarily fail to show any unfair

conduct. *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d at 985 (dismissing "unfair" prong claim as the plaintiffs failed to allege "a claim under the California Constitutional right to privacy"). Also as explained above, Plaintiffs consented to clear disclosures covering all of the alleged activities, so these activities are not "unfair". *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1170 (9th Cir. 2012) (conduct not "unfair" under UCL as matter of law where "clearly disclosed").

At any rate, Plaintiffs' claim fails under any of the three balancing tests used by courts to determine whether a defendant's conduct satisfies the unfair prong. First, "the utility of [Stripe's] conduct" far outweighs "the gravity of the harm to the alleged victim." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 989. As the Court previously noted, Stripe's collection of data to facilitate payments and detect and prevent fraud benefits both merchants and consumers, including Plaintiffs. Tr. 18:23 ("isn't that good for the consumer?").

The second balancing test adopts "the three-part test set forth in Section 5 of the Federal Trade Commission Act: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *In re Anthem, Inc.*, 162 F. Supp. 3d at 989. This balancing test also is satisfied as Plaintiffs have not alleged any privacy injury—let alone substantial injury outweighed by the benefits provided by Stripe's services.

Plaintiffs' claim fares no better under the third balancing test, which requires that "unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id*. Plaintiffs do not allege that Stripe's data collection practices threaten competition, and, for the reasons discussed above, Plaintiffs' claims tethered to statutory and public policy privacy rights fail to establish any violations. *Id.* at 990.

**G.    Plaintiffs Have Not Pled an Unjust Enrichment Claim: Ninth Cause of Action**

As with the other claims, Plaintiffs' unjust enrichment claim is defeated by their consent. *E.g.*, Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011) (alleged enrichment must be "*nonconsensual*" (emphasis in original)). Further, as the Court previously explained, unjust enrichment is a claim for restitution, but Plaintiffs have not pled any theory under which they would be entitled to restitution. Tr. 22:12–20 ("I really don't understand this

unjust enrichment claim. . . . [I]t is a restitutionary claim so you have to have some kind of connection between the two.  You have to have some theory of how . . . Stripe could be receiving a benefit [] at the expense of the plaintiff.").  Plaintiffs have not alleged any specific, plausible facts showing that they were harmed or that Stripe specifically was unjustly enriched through this data collection.  *E.g.*, *Heeger*, 2020 WL 7664459, at *5 (dismissing unjust enrichment claim where there is a "scarcity of facts plausibly demonstrating how Facebook's profits were unjustly earned, given that the only factual allegations are that Facebook collected, stored, and used plaintiffs' IP address information, as to which they had no legally protected privacy interest.").

Moreover, in California, "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).  At best, it is a species of fraud, but as noted Plaintiffs have alleged no fraud.  *See Moose Run, LLC v. Libric*, 2020 WL 3316097, at *5 (N.D. Cal. June 18, 2020) ("A cause of action titled 'unjust enrichment,' however, can be construed as a claim that the plaintiff is entitled to restitution under the theory 'the defendant obtained a benefit from the plaintiff by fraud.'").  At any rate, to proceed on a theory based on fraud, the plaintiff "choose[s] not to sue in tort, but instead to seek restitution on a quasi-contract theory (an election referred to at common law as waiving the tort and suing in assumpsit)." *Id*.  Here, however, Plaintiffs did not "waiv[e] the tort," but, rather, chose to "sue in tort," by also proceeding with their tort and statutory claims.  Under such circumstances, Plaintiffs are not entitled to restitution under a quasi-contract theory.  *See id; In re Apple and AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) ("plaintiffs cannot assert unjust enrichment claims that are merely duplicative of statutory or tort claims") (citing cases).  Nor, in any event, have Plaintiffs alleged that they were "misled or that defendant breached any express or implied covenant as it relates" to the alleged conduct. *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) (Gonzalez Rogers, J.).

V.    **CONCLUSION**

For these reasons, the FAC should be dismissed with prejudice.

DATED:  June 1, 2021                    MUNGER, TOLLES & OLSON LLP


By:    _____*/s/ Jonathan H. Blavin*_____
                JONATHAN H. BLAVIN

Attorneys for Defendant Stripe, Inc.